CASE 24—ACTION BY JOHN COBB AND ANOTHER AGAINST
THE FORD LUMBER & MANUFACTURING COM-
PANY.—May 5, 1910.

## Ford Lumber & Mfg Co. v. Cobb, &c.

Appeal from Perry Circuit Court.

L. D. LEWIS, Circuit Judge.

Judgment for plaintiffs, defendant appeals.—Affirmed.

1.  Principal    and    Agent—Authority—Evidence—Sufficiency.—
    In an action for services in floating logs for defendant under
    a contract with one claimed to be its agent, evidence held
    to show that such person was defendant's agent when the
    contract was made.
2.  Corporations—Agents—Authority—Ratification.—Where    de-
    fendant's officers knew that plaintiffs were engaged in float-
    ing its logs from October, 1903, until the year 1906, when the
    water would permit, and it obtained the benefit of plain-
    tiff's labor by receiving such logs without denying their right
    to do the work  or  question the authority of its agent in em-
    ploying them, defendant ratified the contract of its agent
    in employing plaintiffs to float the logs.
3   Frauds, Statute of—Agreements Not to be Performed Within a
    Year—Possibility of  Performance—Contingency.—A contract
    is not within the statute of frauds if it can by any possi-
    bility be performed within a year, and a contract to float a
    certain number of logs down a river was not within Ky. St.
    section 470, subsec. 7, where high water or ordinary fresh-
    ets might have afforded sufficient water to float all the logs
    within a year, though that did not happen, and it actually
    required more than a year to float them.

W. H. MILLER and S. M. WARD for appellees.

BAILEY P. WOOTTON, JESSE MORGAN and GREENE, VAN-
WINKLE and SCHOOLFIELD for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The appellees, John Cobb and Harvey Hacker, claiming to have verbally contracted with the appellant, Ford Lumber & Manufacturing Company, through its agent, A. B. Asher, in October, 1903, to float out from the "Upper splash dam on Leatherwood creek to the mouth of Stony fork of said creek" a lot of logs at the price of 15 cents per log, to be paid them by appellant, brought this action against the latter in the court below to recover $675 for floating between the points mentioned and out of Leatherwood creek 4,500 logs at the rate of 15 cents per log. The petition set out the provisions of the alleged contract referred to, and averred that appellant failed and refused to pay appellees for floating the logs, although it had received all the logs they had floated out of Leatherwood creek for it; that appellant agreed to pay them at the rate of 15 cents per log for the work they did in floating the logs out of the creek; and that the amount due them therefor at the contract price was $675, the whole of which, it was alleged, was due and unpaid, and judgment was prayed for that sum. The answer of appellant traversed the averments of the petition, placing special emphasis upon its denial of the agency of A. B. Asher, and charged that he was without authority to make any such contract as that pleaded and relied upon by appellees. It was further alleged in the answer that the contract in question, even if made as claimed by appellees, was not in writing, and not to be performed within one year, and was therefore within the statute of frauds. All affirmative matter of the answer was controverted by reply and upon the issues thus made the case

went to trial, which resulted in a verdict in appellees' favor for $600, and the reversal of the judgment entered thereon is sought by this appeal.

There was but little conflict in the evidence as to the number of logs appellees floated out of Leatherwood creek for appellant, and the jury in fixing the number at 4,000, which they must have done in order to award appellees, at the contract price of 15 cents per log, $600, were apparently sustained by the weight of the evidence. It is equally patent from the evidence that Asher made the contract with appellees to float appellant's logs out of the creek as claimed by them. Asher testified that he employed them for that work and agreed to pay them therefor 15 cents per log, and his testimony as to the contract is supported by that of appellees and one or two other witnesses, and is not contradicted by any witness introduced by appellant; but, as to the question of Asher's agency, there was a contrariety of evidence. A careful analysis of the evidence as a whole will demonstrate, however, that its weight strongly conduced to prove that Asher was acting as appellant's agent at the time of making the contract with appellees to float appellant's logs out of Leatherwood creek, that he made the contract for appellant as such agent, and was authorized to make it. To this fact Asher himself also testified, and he was corroborated by appellees. In addition, it was proved by several witnesses, and admitted by appellant, that for a year or more and down to about November 1, 1903, Asher had been appellant's agent and empowered to make on its behalf just such contracts as that he made with appellees. It is true Thomas, appellant's vice president, and Shepperd, who took Asher's place as manager, both testified

that appellant discharged Asher about November 1, 1903, and Shepperd further testified that on November 1, 1903, he informed appellee Cobb of the dismissal of Asher from appellant's service and the appointment of Shepperd as agent in his place. None of this testimony shows, however, that Asher was discharged before he made with appellees the contract for the floating of the logs out of the creek. In point of fact the contract appears to have been made in October and before Asher's dismissal, for Asher and appellees so testified without contradiction. Cobb admitted that Shepperd informed him about November 1, 1903, of Asher's discharge and his (Shepperd's) appointment as agent, but Shepperd did not then question Asher's previous authority to contract as appellant's agent with appellees as he had done; and Cobb, being satisfied of Asher's authority to act for appellant when he contracted with him and supposing Shepperd was, made no comment upon Asher's removal.

There was enough in the conduct of appellant, its officers and agents, to show its and their recognition and ratification of the contract Asher made with appellees and his authority to make it; for appellant, through its officers and agents, knew that appellees under a claim of employment from Asher as appellant's agent were engaged from October, 1903, until some time in the year 1906, as the condition of the water would allow, in floating its logs out of Leatherwood creek and it received the logs of appellees and got all the benefit of appellees' time and labor, but at no time during this more than two years of work by them did appellant or any of its agents deny the right of appellees to do the work, ask by whom they had been employed to do it, or question the authority

of Asher to employ them. It is incredible that appellant's manager, Shepperd, could have supposed appellees were doing such hard labor as they were performing in floating appellant's logs for nothing, or that Asher or any other person having no interest in appellant's corporate stock or business was so disinterested and generous as to employ and pay appellees for floating appellant's logs out of the creek. We do not think appellant's reliance upon the statute of frauds (subsection 7, section 470, Ky. St., was an available defense in this case. The contract made with appellees by its agent, Asher, was not within the statute. It was a contract for personal services, which, though of a continuing character, and in fact prolonged over a period of more than two years on account of the varying stage of the waters of Leatherwood creek, might nevertheless have been performed or terminated within a year. Contracts to be within the statute of frauds must be such as cannot by any possibility be performed or completed within a year. Lawson on Contracts, section 74.

This contract was not by its terms required to be continued beyond the year. Under it appellant was to put the logs in the creek. There were supposed to be about 6,000 of them. Appellees were to conduct or float them to Stony fork, and there redeliver them to appellant. A great rise in the waters of the creek might have lasted long enough to float out all the logs in a few days, or ordinary freshets affording water enough to float the logs might have occurred so frequently as to have enabled appellees to get them to the place of destination in a few weeks, months, or, at any rate, within the year. It does not matter that none of the contingencies we

have mentioned did happen, or that appellees were in fact more than a year in performing the contract. It is sufficient if the happening of any of them within the year would have made the performance of the contract within that year possible. "If the performance of a contract depends upon a contingency which may happen within a year, then it was not within the statute, although that contingency may not in fact happen until after the expiration of the year, and although the parties may not have expected that it would occur within that period. It is sufficient if the possibility of the performance existed." Stowers v. Hollis, etc., 83 Ky. 548; Dickey v. Dickinson, 105 Ky. 748, 49 S. W. 761, 20 Ky. Law Rep. 1559, 88 Am. St. Rep. 337; Myers v. Korb, 50 S. W. 1108, 21 Ky. Law Rep. 163.

We find no error in the single instruction given by the court. It fairly presented all the law of the case. The record presents no ground for disturbing the verdict, and the judgment is affirmed.