## East Tennessee Telephone Company v. Paris Electric Company.

(Decided January 13, 1914.)

### Appeal from Bourbon Circuit Court.

1. Contracts—Not to be Performed Within a Year—Statute of Frauds.—A verbal contract between a telephone and an electric light company by which each was to use the poles of the other, no time being fixed for the performance of the contract, was a contract not to be performed within a year from the making thereof and was therefore within the Statute of Frauds contained in section 470 of the Kentucky statutes.

2. Contracts—Not to be Performed Within a Year—Statute of Frauds.—Contracts for the performance of which no time is fixed, but which from their subject matter admit of performance within the year, and contracts that provide for their performance upon the happening of some event which may or may not take place within the year, are not within the statute, although it may be probable that the contract will not be performed within the year.

3. Contracts—Not to be Performed Within a Year—Statute of Frauds.—But a contract will be within the statute, although no time is fixed for its performance when it is clearly made to appear from the terms of the contract, and its nature, and the situation of the parties, that it was intended and contemplated by

both parties at the time the contract was entered into that it would not and could not be performed by both parties within the year.

4. Contracts—Not to be Performed Within a Year—Statute of Frauds.—This statute is to be strictly construed, and if there is in the terms of the contract, or any reasonable inference that may be drawn therefrom, a contingency upon which the contract might be performed within a year, or the probability of the happening of any event that might result in the performance of it within a year, it will not be within the statute.

5. Contracts—Not to be Performed Within a Year—Part Performance.—The Statute of Frauds has no application to a contract which though indefinite as to time of performance, is capable of being performed by one of the parties within a year and is so performed.

6. Contracts—Duration of When No Time Fixed When It Shall Terminate.—When a contract fixes no time for its duration, and it appears that it was not contemplated by the parties that it should go on forever, or that both parties to it should be bound by its terms for all time to come, it may be terminated at the suit of either upon equitable terms.

7. Contracts—Public Service Corporations Cannot Contract to the Injury of the Public.—Public service corporations are not at liberty to enter into a contract with each other, or with any one else, that will result in the impairment of the service they are under a duty to perform for the public.

8. License Relating to Land—Definition of.—A license is an authority to do a particular act or series of acts upon the land of another without possessing any estate therein.

9. Licenses—Public Service Corporations.—A public service corporation that has acquired from a city the right to occupy its streets, does not own any interest in land, and a contract between two such public service corporations, relating to the use of poles and wires, does not involve any interest in land.

10. Constitutional Law—Franchise—Right to Occupy Streets Cannot be Given by One Public Service Corporation to Another.—The privilege of using the streets of a city cannot be granted by one public service corporation to another public service corporation, as a privilege like this can only be acquired in the manner pointed out in section 164 of the Constitution.

EMMET M. DICKSON for appellant.

DENNIS DUNDON for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The appellant, hereafter called the Telephone Company, is now and has been operating a telephone system in the city of Paris, and the appellee, hereafter called the Light Company, is now and has been operat-

ing an electric light plant in the same city. This suit was brought by the Telephone Company against the Light Company, asking a mandatory injunction requiring the Light Company to remove its wires and other attachments from the poles of the Telephone Company upon all of the streets in the city of Paris except Main street.

In its answer to this suit, the Light Company merely traversed the affirmative matter in the petition.

The lower court, upon hearing the case, dismissed the petition of the Telephone Company, and it prosecutes this appeal.

Although no mention is made in the pleadings of the fact that a contract was made between these companies under which the Light Company asserts the right to put its wires and attachments on the poles of the Telephone Company, it appears in the evidence that such a contract was made. Indeed there is no dispute about the fact that a contract was made in 1900 at which time both companies were occupying the streets with their poles except that the light company alone had poles on Main street.

The controversy between these two companies arises out of their disagreement as to the terms of the contract. The Light Company insisting that the contract gave it the right to put and keep its wires and attachments on any poles that the Telephone Company then had or might thereafter erect on any of the streets of Paris; while the Telephone Company contends that the right of the Light Company to use its poles was limited by the contract to Main street.

The evidence for the Light Conpany tends to show that in 1900 the Telephone Company, having some difficulty in getting permission from the city authorities to erect its poles and wires on Main street, which street was already occupied by the poles and wires of the Light Company, agreed with the Light Company that if the Light Company would permit it to erect poles for the use of its wires on Main street in place of the poles of the Light Company, it would permit the Light Company to put and keep its wires and attachments on these poles, and in addition thereto the Telephone Company would permit the Light Company to put its wires and attachments on the poles of the Telephone Company on any of the other streets of Paris.

The evidence for the Telephone Company also tends to show that a contract between the two companies was made in 1900, but that it was limited to Main street, and that the Telephone Company did not agree that the Light Company might put and keep its wires or attachments on any of the poles of the Telephone Company, on any other streets. In short, the only difference between the parties as to the contract is that the Telephone Company contends it was limited to Main street, while the Light Company contends it embraced all streets on which the Telephone Company might have poles.

And it might not be out of place to here note that the conduct of the parties conduces strongly to sustain the contention of the Light Company as to the terms of the contract, and to show that under the contract the Light Company had the right to use the poles of the Telephone Company on other streets than Main street, because from 1900 until shortly before the institution of this suit in 1907, the Light Company, without apparent objection, used the poles of the Telephone Company on a number of streets in the city.

Taking up now the legal questions involved we find that the contract made between these companies in 1900 was not reduced to writing, and this being so, the first question that naturally suggests itself is, does the contract fall as contended for the Telephone Company within the prohibition of section 470 of the Kentucky Statutes, reading:

"No action shall be brought to charge any person * * * upon any agreement which is not to be performed within one year from the making thereof, unless the promise, contract agreement, representation, assurance, or ratification, or some memorandum or note thereof, be in writing and signed by the party to be charged therewith, or by his authorized agent; but the consideration need not be expressed in the writing. It may be proved when necessary, or disproved by parol or other evidence." For if the contract was within this statute, the case for the Light Company must fall, as its rights depend on the existence of a valid contract between these companies.

Looking to the contract in the light of this statute, by which its validity is to be determined, two questions arise: First, was the contract, within the meaning of the statute, to be performed within one year from the

making thereof and; second, if not, will a part performance of it take it out of the prohibition of the statute?

We think it evident that the contract was not to be performed by both parties within one year from the making thereof, but on the contrary that. it was contemplated, as shown by the evidence and conduct of both parties, that it would not be and was not intended by either party to be fully performed by both parties within a year from the making thereof, and this is true whether the contract be as claimed by the Light Company or the Telephone Company.

There are numerous authorities holding that "contracts for the performance of which no time is fixed, but which from their subject-matter admit of performance within the year, are not within this clause of the statute, even if it is probable that the contract will be performed after the year," and others holding that "if the contract provides for performance upon the happening of some event which may or may not take place within the year, such contract is not within the statute." Page on Contracts, sections 674-675; Howard v. Burgen, 4 Dana, 137; Stowers v. Hollis, 83 Ky., 544; Fain v. Turner, 96 Ky., 634; Dickey v. Dickinson, 105 Ky., 748; Ford Lumber & Mfg. Co. v. Cobb, 138 Ky., 174; Yellow Poplar Lumber Co. v. Rule, 106 Ky., 455; Bastin Telephone Co. v. Richmond Telephone Co., 117 Ky., 122.

But the facts of this case do not bring it within the rule laid down in this line of authorities; but they do bring it, as we think, well within the principle that a contract is within the statute although no time is fixed for its performance when it is clearly made to appear from the terms of the contract and its nature and the situation of the parties, that it was intended and contemplated by both parties at the time the contract was entered into that it would not and could not be performed by both parties within the year. Browne on Statute of Frauds, section 281; McPherson v. Cox, 96 U. S., 404, 24 L. Ed., 746; Walker v. Johnson, 96 U. S.. 424, 24 L. Ed., 834; Warner v. Texas & Pacific Railroad Co., 164 U. S., 418, 41 L. Ed., 495; Blanding v. Sargent, 33 N. H., 239, 66 Am. Dec., 720; Kent v. Kent, 62 N. Y., 560, 20 Am. Rep., 502.

It should, however, be said that these cases, although recognizing the principle announced, all agree that the statute should be strictly construed, and that if there is

in the terms of the contract, or any reasonable inference that can be drawn therefrom, a contingency upon which the contract might be performed within a year, or the probability of the happening of any event that might result in its performance within the year, it will not be within the statute. There is, however, no intimation or suggestion in this record that the performance of this contract depended on any contingency or the happening of any event that could take place within a year from the time the contract was entered into. So that we feel warranted in saying that the contract here in question was one that was not to be performed by both parties within a year and is, therefore, non-enforceable, unless it be that the performance of it by the Light Company takes it out of the prohibition of the statute.

It is admitted by counsel for the Telephone Company that a contract was made between the two companies by which it was agreed that the Telephone Company should take down the poles of the Light Company on Main street between the Windsor Hotel and Tenth street and put its own poles in their place, and that the Light Company might use these poles for its wires and attachments. It is further shown that although the Light Company has placed and maintained its wires and attachments on the poles of the Telephone Company since the contract was made, not only between the Windsor Hotel and Tenth street, but upon other parts of Main street, that the Telephone Company in this suit does not ask that the Light Company be required to remove its wires or attachments from any of the poles of the Telephone Company on any part of Main street. It only complains that the Light Company is wrongfully maintaining its wires and attachments on its poles on a number of other streets in the city.

In view of the fact that the Light Company consented that the Telephone Company might take down the poles of the Light Company on Main street and put up its own poles and use them for its own wires and attachments in connection with the wires of the Light Company, and that it is not sought to interfere with this arrangement so far as Main street is concerned, it is evident that the terms of the contract, so far as they referred to what the Light Company should do, were fully performed by it within the year by its consent that the Telephone Company might have its right of way on

Main street, and by the full execution within the year of this part of the contract by the Telephone Company in placing its poles on Main street under the contract.

The contract, however, on the part of the Telephone Company, was not performed or intended to be performed within a year from the time the contract was made. It may have been partly executed in that year, but it was a continuing obligation on its part to permit the Light Company to keep its wires and attachments on the poles of the Telephone Company on other streets than Main street, and it is undenied that under this contract the Light Company has at different times between the date of the contract and the institution of this suit, put its wires and attachments on such poles of the Telephone Company in the streets of Paris as it desired to use.

Looking at the case from this standpoint, we have the condition of a verbal contract not to be performed within one year by both parties but that has been fully performed by one of them within the year, and this condition takes the contract out of the statute and leaves it a valid and enforceable contract.

This question was definitely settled by this court in Dant v. Head, 90 Ky., 255. In that case it appears that Head sold to Dant his interest in a brand of whiskey or trade-mark in consideration of Dant's agreement to pay him one hundred dollars at the end of each year for eight years. Head brought suit to enforce the collection of the second installment, and this suit Dant defended upon the ground that the contract sought to be enforced was not to be performed within a year, and, therefore, no action could be brought to charge him upon it, as neither he nor any agent had signed any agreement to be bound. It further appears that Head has performed his part of the contract by delivering to Dant the brand of whiskey or trade-mark he agreed to sell him for the consideration stated. In holding that the plea of the statute was not available to Dant, the court said:

"It now seems to us the statute was intended and does properly apply only to an agreement that is not to be performed by either party within a year, but not to one which is to be or has been performed by one or either of them within such period, and that construction has been adopted elsewhere. For if the practical effect and operation of the statute is, as has been uni-

formly held by this court, in every case where one party has performed an agreement within a year, to hold the other party liable on such agreement, although he is not to be performed within a year, such should be construed and held to be the meaning and import of the language used. In fact, the statute properly applies to agreements that are wholly executory; and one which has been performed by one of the parties within a year is, to that extent, executed, and cannot, with propriety, be called an agreement not to be performed within a year." In Jones v. Comer, 25 Ky. L. R., 773; Bethel v. Booth & Co., 115 Ky., 145; Botkin v. Middlesborough Town & Lands Co., 23 Ky. L. R., 1964; Noland v. Cincinnati Cooperage Co., 26 Ky. L. R., 837; Weber v. Weber, 25 Ky. L. R., 908, the rule laid down in this case was approved.

In the note to Tyler v. St. Louis Southwestern Ry. Co. (99 Tex., 491), 13 A. & E. Ann. Cases, 916, the editor states that "It is now well settled, in a majority of the jurisdictions, that the Statute of Frauds has no application to a contract which, though indefinite as to the time of performance, is capable of being performed by one party within a year and is so performed." And in support of this rule many decisions from courts of other states are cited.

On the contrary, a few courts hold that a contract must be fully performed by both parties or be capable of performance within the year to be taken out of the statute; but this court is now firmly committed to the rule announced in Dant v. Head, and without further elaboration we may say that it is controlling authority in this case on the point that the contract is not within the Statute of Frauds.

The further argument made by counsel for the Telephone Company is that if the contract was not within the statute, it amounted to nothing more than a license revocable at the pleasure of the Telephone Company, and this argument although not tenable, should be noticed. The contract here in question was based on a valuable consideration; it is not difficult of understanding and has none of the elements of a license, which is generally defined to be "An authority to do a particular act or series of acts upon the land of another without possessing any estate therein." Bouvier's Law Dictionary; 18 A. & E. Ency. of Law, 1127; 25 Cyc., 640.

Neither of these companies owned or had any interest in the land on which their poles were erected or over which their wires ran. They only had the mere privilege of occupying the streets for the conduct of their business by the consent of and under the authority granted by the city. The contract between them did not affect the privilege acquired in the streets by either of these companies from the city of Paris. It only referred to ths use of the poles the companies might erect on the easement acquired by them. The Light Company, in giving to the Telephone Company the right to put its poles on Main street, did not and could not transfer to the Telephone Company the privilege obtained by the Light Company from the city to put its poles on this street, nor did the agreement by which the Telephone Company consented that the Light Company might use its poles on other streets have anything to do with the privilege the Telephone Company had acquired from the city to use these streets.

If the Telephone Company did not have a right granted by the city to occupy Main street with its poles and wires, then the Light Company could not give it this right. The privilege of using the streets of a city cannot be granted by one public service corporation to another public service corporation. It can only be acquired in the manner pointed out in section 164 of the Constitution. So that unless the Telephone Company had acquired from the city the right to occupy Main street, it did not secure by its contract with the Light Company anything of value, because the Light Company had nothing to give it.

On the other hand, if the Telephone Company had the right to use Main street, the contract with the Light Company about poles and wires did not involve any interests in land or in the street. As we look at it, the contract between these companies, no matter which view of it may be accepted, did not involve any interest in land, and, therefore, is wanting in the essential elements of a license.

Passing as not important the argument of counsel in respect to the pleadings, the remaining question relates to the duration of the contract. No time was fixed by its terms when it should terminate, and the question is, does the contract continue indefinitely or may it be

terminated upon equitable terms at any time by either of the parties to it?

This question has frequently come before the courts, and there is much conflict in the opinions touching the life of contracts like this. Some courts hold that when the contract fixes no time for its duration, it is to continue indefinitely and cannot be terminated at the election of either of the parties, while other courts hold that it may be terminated by either party upon reasonable notice. Full and instructive discussions of this subject may be found in McKell v. Chesapeake & Ohio Ry. Co., 175 Fed., 321; 20 A. & E. Ann. Cases, 1097; Stonega Coke & Coal Co. v. Louisville & Nashville R. R. Co., 106 Va., 223, 9 L. R. A. (n. s.), 1184; Western Union Telegraph Co. v. Pennsylvania Company, 129 Fed., 849, 68 L. R. A., 968.

Of course the parties to this contract, being competent to contract, had the undoubted right to make a contract without limit as to time, but the evidence in this record, although it states very fully the terms of the contract, does not show that anything was said by either of the parties as to the time the contract should continue or the manner of its termination, and we are inclined to the opinion that it was not contemplated by them that this contract should be of unlimited duration.

Paris is a large and growing city, and it is entirely improbable that the Telephone Company, that had, as it appears, a license or permit granted before the adoption of the present Constitution, to occupy the streets, would have given to the Light Company the right to use any poles it might erect on any street in Paris for an unlimited time in consideration of the agreement of the Light Company to let it have what the witnesses called the "right of way" or "pole privilege" of the Light Company on Main street.

There too is another consideration that influences us, in the absence of controlling evidence, to hold that this contract is not of unlimited duration. Both of these companies are engaged in performing a public service, and there is evidence tending to show that the service of the Telephone Company is impaired and the lives of its patrons and employes endangered by the use of its poles by the wires and attachments of the Light Company. And a public service corporation will not be permitted to enter into a contract that will result in the

impairment of the service it is under a duty to perform for the public. For this reason the Telephone Company should not be hindered or embarrassed by this contract for all time to come in its efforts to furnish to its patrons the character of service they are entitled to have, and while we do not of course feel at liberty to make a contract for these parties or to make material alterations in a contract they have made, we may with propriety, supply an important omission in the contract by so construing it as that it may be terminated at the suit of either upon equitable terms.

The condition of the record is such that we do not think it advisable to indicate the terms upon which the contract may be terminated, preferring to leave the questions that may arise if a suit to terminate is brought, to be settled in such a suit.

On the record before us the judgment appealed from must be affirmed, and it is so ordered.