## Evansville Railways Company v. Ligon's Administrator.

(Decided December 7, 1916.)

## Appeal from Henderson Circuit Court.

1. Corporations—Ownership of Stock in Other Corporations—Effect of.—No matter how much stock one corporation owns in another, it is not by reason of its ownership of stock liable for the negligent acts of the corporation whose stock it owns unless it really operates the corporation.

2. Corporations—Control of the Affairs of One Corporation by Another—Effect of.—Although one corporation may by reason of its ownership of a majority of the stock in another corporation exercise a superintending control over its affairs, this control will not charge the corporation with liability for acts of negligence committed by the other corporation unless it really operates it.

3. Corporations—Two Corporations Having Same Officers—Effect of.—The fact that the general officers of two corporations are the same, will not make either liable for the negligence of the other.

4. Corporations — Stockholder in Incompetent to Testify Against Dead Person.—Under section 606 of the Civil Code a stockholder in a corporation has such a pecuniary interest in the corporation as to disqualify him from testifying for it concerning any verbal statement of or transaction with a person who is dead when the testimony is offered.

5. Master and Servant—Liability of Employing Master for Injury to Servant While Working for Another Person.—If a servant is injured while performing a service for another than his employer, the employing master will be liable to the servant if the employment in which the servant was injured was such as arose out of his employment.

6. Master and Servant—Liability of Master on Account of Injury to Servant While Working for Another—Evidence.—Where a servant was employed and paid by one corporation and under this employment was required to and did perform service for another

corporation in the course of which he was injured, evidence that the employing corporation engaged his services and paid him was sufficient to take the case to the jury, although as between themselves each corporation paid for the services the servant rendered to each.

ALBERT W. FUNKHOUSER, ARTHUR F. FUNKHOUSER, ROBERT D. MARKEL, ALBERT. C. FUNKHOUSER and JOHN D. WORSHAM for appellant.

GIBNEY O. LETCHER and DORSEY & DORSEY for appellee.

Opinion of the Court by Judge Carroll—Affirming.

This suit was brought by the administrator of Ligon against the Henderson Traction Co. and the Evansville Railways Co. to recover damages for the death of Ligon, which it was alleged was caused by the joint and concurring negligence of both companies. On the first trial of the case there was an agreed judgment against the traction company for nine hundred dollars and a directed verdict in favor of the railways company. From the judgment on this directed verdict the administrator appealed to this court, and in an opinion that may be found in 165 Ky. 202, the judgment of the lower court directing a verdict in favor of the railways company, was reversed, and the case against the railways company remanded for another trial.

On the second trial of the case there was a judgment in favor of the administrator against the railways company for eight thousand dollars, to be credited by nine hundred dollars paid by the traction company, and from this judgment the railways company prosecutes this appeal.

Taking the statement of the facts from the former opinion, it appears that "the decedent, J. Owen Ligon, was at the time of his death, and for many months prior thereto employed by the appellee, Evansville Railways Co., to sell tickets and collect moneys therefor at its office or station in the city of Henderson, and that it was a part of his duty under such employment to enter every night the cars of the Henderson Traction Co., stored in its powerhouse, after their use for the day, and remove the money from the boxes thereof which had been received during the day as fares collected from passengers; that on the first day of August, 1913, and while performing the duty last mentioned, the decedent lost

his life under the following circumstances: Upon entering the powerhouse at eleven o'clock p. m., it became necessary for the decedent to light up a car from which he was required to remove the day's fares, in order that he might see how to unlock the money box, and as this lighting could be done only by adjusting to the electric wire above the trolley pole attached to the car, this he accomplished by stepping on the track in front of the car in question; but upon connecting the trolley pole with the electric line the car suddenly moved toward the decedent, and, before he could get off the track, struck and jammed him against another car standing on the same track a few feet distant, the force of the collision causing his death. This sudden and unexpected movement of the car was, as alleged in the petition, caused by the negligence of the defendants and their motorman last in charge of the car, in leaving it in the powerhouse without putting on the brake or so adjusting the motor as to prevent it from being moved by the application of the electric current resulting from connecting the trolley pole of the car with the wire above.

"It also conclusively appears from the evidence that the dangerous condition of the car was unknown to the decedent, because had he entered it before adjusting the trolley pole to the electric wire overhanging the car, there would have been no light to enable him to discover that the brake was not on, or that the electric current had not been disconnected from the motors; and there was no way to produce light without attaching the trolley pole to the overhead wire, which could only be done by the decedent going upon the track in front of the car and manipulating the trolley pole by means of the line kept hanging from the trolley pole for that purpose. . ."

It also appears "that the decedent acted as agent of the appellee in selling tickets for use on its line nine months before his death; that for the last three months of that time he performed the duty each night of removing the fares from the money boxes of the cars of the Henderson Traction Co., for which work, as well as the services performed by him as appellee's ticket agent, he was compensated by the latter; and that no compensation was paid him by the Henderson Traction Co.; that W. A. Carson, admittedly in the employ of appellee, acted as the manager of the cars, operatives and business of both the appellee and the Henderson Traction Co."

KENTUCKY REPORTS. [Vol. 172.

The answer of the railways company admitted "that the decedent was, at the time of his death and for many months prior thereto, employed by the appellee, Evansville Railways Co., to sell tickets at its office or station in the city of Henderson, but denies that it was a part of his duty under such employment to perform any service for the Henderson Traction Co., either in the matter of removing the day's fares from its cars in the powerhouse after their use for the day, or otherwise, or that in performing such service for the latter company; the decedent was acting as an employe of appellee."

And the grounds upon which a recovery was sought were:

"(1) That his intestate was jointly employed by the defendant railway companies to do the work he was killed in performing; that the work was being performed for their joint benefit, and that his death was caused by the joint and concurrent negligence of the two employers, in failing to provide him a reasonably safe place in which to work and reasonably safe appliances for performing the work required of him; (2) that at the time of his death the decedent was in the employ of the appellee, Evansville Railways Co., alone, and that the work he was performing when killed appertained to such employment and was required of him by that company, which then owned a majority of the capital stock of the Henderson Traction Co., employed and paid its operatives, managed and controlled its operation and affairs; and that the death of the decedent was caused by the joint and concurrent negligence of the two railway companies in failing to provide him a reasonably safe place in which to work and reasonably safe appliances for performing the work required of him."

In stating the law of the case the court said: "If the employe of one railroad company is injured while performing a service for another railroad company, by its negligence, the responsibility of the latter for the injury resulting from its negligence will not relieve the company which employed the injured servant from liability therefor, if the performance of the service in which the injury was received was such as arose out of the employment. The duty of the master to furnish the servant with a reasonably safe place, material and appliances in and with which to work cannot be delegated to another; C. & O. Ry. v. Markham, 136 Ky. 245; G. C. &

S. F. Ry. Co. v. Dorsey, 18 S. W. 444. In such state of case the person injured may maintain a joint action against both wrongdoers; Brown v. Cox Bros. & Co., 75 Fed. Rep. 689.''

On this appeal it is urged as grounds for reversal (a) that the court should have directed a verdict in favor of the railways company; (b) that the damages are excessive; (c) that the court erred in admitting incompetent and rejecting competent evidence; (d) that the court erred in giving and refusing instructions.

The determinative question in the case is, was Ligon at the time he received the injuries from which he died employed by the railways company, and did his duties under his employment require him to perform the services in which he was engaged at the time of the injury? If he was an employe of the railways company and was killed while performing duties under this employment, the railways company cannot escape liability upon the ground that the negligence of the traction company brought about his death. As was said in the former opinion, if an employe of one railroad is injured by the negligence of another company, this will not relieve the employment company from liability if the performance of the service in which the injury was received arose out of the employment.

It is not seriously disputed that the negligence of the traction company caused the death of Ligon, and so the only material question left open is whether or not Ligon was performing duties that he owed under his employment by the railways company. The railways company denies that under his employment it was his duty to remove the cash boxes from the cars of the traction company or that it had any interest in that work or control over Ligon while so engaged. It contends that Ligon did this work as the servant of the traction company and under employment by it.

It seems to be conceded that the railways company owns a majority of the stock in the traction company, but this does not of course make it liable for the negligence of the traction company. No matter how much stock a person owns in a corporation, he is not by virtue of this fact alone liable for its negligent acts, although we think evidence of the fact that the railways company was a large stockholder in the traction company was in this case a relevant circumstance, tending to show, in

connection with other facts, that the railways company really operated the traction company. Pullman Palace Car Co. v. Missouri Pacific R. Co., 115 U. S. 587, 29 Law Ed. 499.

It is shown by the evidence that the offices of the traction company and the railways company, which were located in Evansville, were under the same management and control. Both companies were under the authority of the same auditor, the same general manager, and the same superintendent of transportation. It further appears that the employes of the traction company were paid by the checks of the railways company, although in adjusting the accounts between these two companies the traction company reimbursed the railways company for money that it expended in paying employes of the traction company. It further appears that employes of each company rendered service for the other company. So that while it is true there were two separate, corporate entities, it would be difficult to find two distinct corporations so thoroughly under the management and control of one of the corporations as was the traction company under the control of the railways company. In fact the evidence comes very close to showing that the railways company actually operates the insolvent traction company.

We do not, however, hold that merely because of the superintending control by the railways company over the affairs of the traction company, the railways company should be charged with the acts of negligence committed by the traction company that caused the death of Ligon. Nor do we think its liability should be put on the ground that the general officers of the two corporations were the same, for two or more corporations may have the same general officers and yet neither be liable for the negligence of the other by reason of this common officership.

Under the facts of this case if the railways company is liable, it is because Ligon at the time he received the injuries complained of was its employe, performing duties for it in the course of his employment, and so we will now consider the evidence for the purpose of determining whether there was sufficient evidence to take the case to the jury and sustain the finding upon the theory that Ligon when injured was performing services under his employment by the railways company. If there was, then the judgment cannot be reversed because of the

refusal of the trial judge to direct a verdict for the railways company, or because there was evidence in behalf of the railways company tending to show that Ligon was performing services when injured as the servant of the traction company. It may be conceded that the evidence upon these points is conflicting, but yet we think there was sufficient to take the case to the jury and sustain the verdict. There was evidence, as said in the former opinion, to show that Ligon was employed by the railways company, that he was paid by it and under its control, and that he was at no time the servant of the traction company. That the traction company did not pay him for doing the work in which he was engaged when injured, and that it did not employ him to do this work. That he did it solely because his employment with the railways company required him to do it.

After the death of Ligon the railways company paid his administrator some wages that were due him. Watson, although an employe of the traction company, was paid by the railways company. Lynn, the president of the traction company, said that the traction company had no person in its employ by the name of Epmeier, and yet it appears that Epmeier was an officer of the traction company and paid for his services by the railways company. Maher, who succeeded Ligon and did the work for both companies that Ligon did, testified that Ford, as auditor of the railways company, employed him, and that he was paid by the railways company. Hicks, who devoted all of his time to the traction company, was paid a small sum for services to this company by the railways company.

Without relating further of the evidence, we think it fairly shows that Ligon should be treated as an employe of the railways company whether he was working directly for it or performing some service for the traction company, such as "robbing the cars."

It is true the railways company's evidence showed that the traction company reimbursed it for money it paid to its employes for the time they were engaged in working for the traction company, but we do not regard this circumstance as of controlling importance. The arrangements these companies had between themselves, or the system of bookkeeping by which they adjusted their accounts, or the fact that the traction company reimbursed the railways company, does not conclusively

show that Ligon or the other employes of the railways company who worked for the traction company were the servants of the traction company while engaged at work for it. If it were true that these employes had two masters, working a while for one and then a while for the other, it is singular that the employes did not know something about it. But they did not, as all of them believed they were employes of the railways company.

The vital issue in this case, which was, as we have stated, whether Ligon in "robbing the cars" worked under his employment by the railways company or as an employe of the traction company, was clearly submitted to the jury in the instructions. In instruction number one the court told the jury that if they believed from the evidence that Ligon at the time of his injuries was employed by the railways company and that it was his duty under said employment to "rob the cars" of the traction company, it was the duty of both companies to use ordinary care to furnish him a reasonable safe place in which to work." In instruction number two the jury were told that "the court instructs you that if you shall believe from the evidence that at the time J. Owen Ligon was killed he was performing a service for the Henderson Traction Company, under employment from said company, and that the Evansville Railways Company, had no control over him in the performance of said service, and that it was not required of him under the terms of his employment by the Evansville Railways Company, then the law is for the defendant and you will so find."

Counsel for the railways company complain because the court did not give instruction "D" offered by it, reading as follows: "If you find that J. Owen Ligon, plaintiff's decedent, was at the time he received the injuries complained of, performing services for the Henderson Traction Company, and was under its sole control and direction in the performance of said service, and that the defendant had no use of, control over, or interest in the car barn of said Henderson Traction Company or in the cars stored therein, and the said Ligon was in fact paid for said services by said Henderson Traction Company, your verdict should be for the defendant, notwithstanding the fact, if it be a fact, that said Ligon was paid therefor directly by the checks of the defendant,

if you further find that said Henderson Traction Company reimbursed the defendant therefor.''

But it seems to us that instruction number two given by the court embraced every material thing in instruction "D" that was offered and refused and submitted clearly to the jury the real issue in the case.

In the matter of assigned errors in the rejection of evidence, Sam Talley testified that he was a ticket agent of the railways company, but that he counted the cash taken from the street cars of the traction company and put it in the bank to the credit of the traction company. He said he gave change to the motormen of the traction company but did not make out any report for the traction company. "Q. Did you have any conversation with Mr. Powell about the payment of salary? A. Yes, sir; Mr. Powell told me that my check would come from the Evansville Railways Co. and would be reimbursed by the Henderson Traction Company.'' On motion the court excluded from the jury so much of the evidence of Talley as related to what Powell said to him, and it is insisted that this was prejudicial error. We do not think so, because it was shown in the evidence by other witnesses, without objection, that the Evansville Railways Co. was reimbursed by the traction company for money that it paid to its employes for service rendered by them to the traction company. In fact, counsel for the railways company in their brief say, "As a matter of fact, it was so reimbursed, as the undisputed proof shows." It is, therefore, very apparent, assuming that this evidence should have been admitted, that the court, in excluding the evidence of Talley relating to what Powell told him, did not prejudice any substantial right of the railways company.

W. A. Carson testified that he was the general manager of the Henderson Traction Co. and also vice president and general manager of the railways company. He was asked this question by counsel for the railways company: "If you hired Mr. Ligon, whether he was hired to perform any services for the Henderson Traction Company, and if so, state what those services were?" Objection to this question was sustained, and the avowal made "that if the witness were permitted to answer the question, he would state that he employed the decedent, J. Owen Ligon, to sell tickets in the city of Henderson for the Evansville Railways Co. and to make out re-

'ports, furnish motormen change and to take fares from the cars for the Henderson Traction Co., and informed Ligon that for his services he would receive a monthly salary of thirty dollars per month, to be paid by a check from the Evansville Railways. Co., and that the Evansville Railways Co. would be reimbursed by the Henderson Traction Co. for the services rendered by the said Ligon to the Henderson Traction Co. at the rate of ten dollars per month."

The trial court excluded this evidence upon the ground that Carson was, as he testified, a stockholder in the railways company and therefore could not, under section 606 of the civil code, testify "concerning any verbal statement of, or any transaction with, Ligon."

It was said in Storey v. First National Bank, 24 Ky. L. R. 1799, that a stockholder in a corporation has such a pecuniary interest in the corporation as to disqualify him from testifying for it concerning any verbal statement of or transaction with a person who was dead when the testimony was offered to be given. And this ruling was approved in Leonora Nat. Bank v. Ragland, 128 Ky. 548, Farmers Bank of Wickcliffe v. Wickliffe, 134 Ky. 626, and other cases.

Under this rule Carson, who was a stockholder in the railways company, was clearly incompetent to testify as to conversations with Ligon, whose administrator was prosecuting this suit against the railways company, unless it be that his disqualification was removed by the circumstance that he was also the general manager of the traction company at the time the conversation took place. We do not think, however, that this circumstance affects the competency or incompetency of his evidence. If he had not been a stockholder in the railways company, he could have testified concerning conversations with and directions given by him to Ligon at the time he employed him or afterwards. It is the fact that he was a stockholder in the railways company at the time he was offered as a witness that disqualified him from relating these conversations or directions. He was not offered as a witness on behalf of the traction company, because the traction company at the time of the trial had no concern in the case. The suit was being prosecuted solely against the railways company, and we are unable to perceive how the fact that Carson was the general manager of the traction company could remove

the disability created by his ownership of stock in the railways company, the only party in interest adverse to Ligon's estate.

It is further suggested that the verdict was excessive, but there is no merit in this contention, as Ligon at the time of his death was a vigorous man about twenty-one years old.

Upon the whole case, we find no error prejudicial to the substantial rights of the railways company, and the judgment is affirmed.