## Jefferson Woodworking Company, et al. v. Mercke, et al.

(Decided December 6, 1927.)

Appeal from Jefferson Circuit Court
(Chancery Branch, First Division).

1. Corporations.—In suit by widow, individually and as executrix of stockholder, to require corporation to issue certificate for stock, in which defendants claimed that plaintiff was not entitled to amount of stock sued for because stockholder's brother had been taken into company, evidence held sufficient to establish contract whereby brother of stockholder, including deceased, had made agreement whereby brother agreed to give up his business and become stockholder on equal basis with the others, and pay into treasury of company sum equal to one-third of net value of corporation's assets.

2. Witnesses.—Under Civil Code of Practice, sec. 606, subsec. 2, stockholders could testify that stockholders, including deceased, had agreed that their brother should come into company on equal basis with them as stockholder, and pay one-third of net value of corporation's assets, in suit by widow of deceased stockholder, individually, and as executrix, to compel corporation to issue certificate of stock, since such testimony was against their interests.

3. Contracts.—Rule that unilateral contract is not enforceable could not be invoked, where contract had been performed by one not bound.

4. Corporations.—Where stockholders of corporation had agreed that, if their brother would give up his business, and come into company with them, they would take him in on equal basis, and that he should pay one-third value of net assets of corporation, and one stockholder made statements not communicated to brother to effect that he felt under no obligation to go through with contract, after brother had given up his business and been engaged in performance of his part of contract for several years, stockholder's statements did not abrogate contract.

5. Frauds, Statute of.—Contract whereby stockholders of corporation agreed with their brother that brother should give up his business and come into corporation on equal basis, and pay one-third of value of net assets of corporation, was one which was not impossible to perform within year so as to be unenforceable under statute.

6. Corporations.—Where stockholders, owning 83⅓ shares, had taken their brother into company on an equal basis pursuant to agreement whereby he gave up business and devoted his time to corporation and paid one-third of value of net assets of corporation, widow suing individually and as executrix of deceased stockholder, held entitled to only 62½ shares and rights which had accrued by reason of her stock ownership to this extent.

BLAKEY, DAVIS & LEWIS for appellants.

ROBERT F. VAUGHAN for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Reversing.

The Jefferson Woodworking Company and George T. Mercke have appealed from a judgment of the Jefferson circuit court in favor of Florence Mercke, individually, and as executrix of the estate of her husband, Edward J. Mercke. The suit was instituted in the lower court by the appellee, and in that suit the Jefferson Woodworking Company alone was made defendant. The basis of her suit was that her husband was the owner of 83 1/3 shares of the capital stock of the Jefferson Woodworking Company, which was of the value of $150,000, and that it had refused to issue to her as executrix of the estate of her husband the shares of stock she claimed. She prayed that it be required to issue to her a certificate for the 83 1/3 shares of stock, or that, if the company could not issue and deliver to her the stock, she have judgment against it for $150,000, the alleged value of the stock.

The Jefferson Woodworking Company filed its answer, in which it denied that she was entitled to 83 1/3

shares of its capital stock, and alleged that she was entitled to only 62 1/2 shares. In a second paragraph of its answer it set out in detail the facts which it alleged reduced her interest as executrix from 83 1/3 shares to 62 1/2 shares, and this paragraph of the answer was denied by reply. George T. Mercke offered to file his petition asking that he be made a party defendant to the suit, and asking that his petition be taken as his answer, counterclaim, and cross-petition. He also made allegations of fact in his petition showing that Florence Mercke, as executrix, was entitled to no more than 62 1/2 shares, and that he was entitled to a like number of shares.

In 1908 C. C. Mercke, E. J. Mercke, and R. L. Mercke organized the Jefferson Woodworking Company. They were brothers, and George T. Mercke, who is a party to this appeal, was another brother. The capital stock of the company by the articles of incorporation was fixed at $25,000, divided into 250 shares of the par value of $100 each. The articles of incorporation set out that C. C. Mercke, E. J. Mercke, and R. L. Mercke had each subscribed for 83 1/3 shares of the capital stock. This stock was never issued. The business of the company was carried on as a family affair, and there was no record kept of any meetings of the board of directors until after the death of E. J. Mercke, and until about the time of the institution of this suit. The business of the company prospered, and in the latter part of December, 1916, negotiations commenced between the three stockholders of the corporation and their brother George T. Mercke, looking to arrangements whereby George T. Mercke should give up the business in which he was then engaged and become a part of this organization of the company. He did give up his business in 1917, and became identified with the company, and so continued his work in connection with the company until the death of his brother E. J. Mercke, which occurred on November 5, 1923.

A correct determination of the rights of the parties to this action depends upon the nature of the arrangements made by the three brothers with George T. Mercke, which induced him to come into the company. E. J. Mercke is dead, and we do not know what his understanding of the arrangements was except as his knowledge is detailed by others. C. C. Mercke and R. L. Mercke testified in the case. The testimony of R. L. Mercke and C.

C. Mercke substantially shows that it was agreed between the three stockholders of the company at the time on one side and George T. Mercke on the other, that, if George T. Mercke would dispose of the business which he was then conducting, and should become identified with the business of the company and should assist in its management and operation, that he should become equally interested with the other three, and that he should have the same voice in the management and operation of the company as either of the others, and, furthermore, that he should own an equal amount of the capital stock, that is, that the other three would reduce their holdings from 83 1/3 shares of stock to 62 1/2 shares, so that he might likewise have 62 1/2 shares of the capital stock in the company.   At the time George T. Mercke became identified with the company the preceding annual statement as of December 31, 1926, showed that the assets of the company amounted to $97,012.90.   Under the arrangements or contract whereby George T. Mercke was to come into the company he was to pay into the treasury of the company a sum equal to one-third of the net value of the assets of the company as of December 31, 1916.   Each of the four, under the terms of the contract was to receive an equal salary from the company after George T. Mercke should become identified with it.   By the terms of the contract it was contemplated that George T. Mercke should come into the company, and that all four of the brothers should in all respects be equal after George T. Mercke had paid into the treasury of the company one-third of the value of its assets.   By the agreement he was allowed to pay this sum by leaving with the company a part of his salary from time to time.   He commenced his duties with the company in July, 1917, and continuously after that time he was an employee and officer of the company, receiving a salary the same as the other three.   He left with the company a part of his salary from time to time until, on December 31, 1922, the amount which he had left with the company in payment for one-third of the assets amounted to $31,181.62, and at the end of the year 1923 the amount which he had left with the company from his salary aggregated $35,820.12.   He was to pay no interest.

After the death of E. J. Mercke, stock certificates were issued to each of the brothers then living for 62½ shares of the capital stock, and a certificate for a like

number of shares was issued to Florence Mercke, as executrix of her husband.

The facts above detailed are substantially established by the evidence of C. C. Mercke and R. L. Mercke. There is one other matter tending to support their testimony in regard to the terms of the contract. The annual statement of date December 31, 1916, showed the assets of the company to be of the value of $97,012.90, but the company was indebted to the mother of the incorporators in the sum of $7,000, which did not appear as a liability in that statement as the item had never been entered as a charge on the books of the company. After the death of their mother, and after George T. Mercke had become identified with the company, in the settlement of her estate her executor collected this note, and one-fourth of it was charged to each of the four brothers interested in the company. This is shown by the books of the company.

The evidence tends to show that, when George T. Mercke became identified with the company, he was to pay one-third of the value of the assets, but the other three brothers should have the right to withdraw from the assets of the company the surplus which at the time amounted to more than $65,000. This indicates that he paid more than $30,000 for a one-fourth interest in the original capital stock of the company. At that time the company was prosperous, and its prosperity continued, tending to show that both parties were benefited by the agreement.

There is evidence tending to show that E. J. Mercke a short while before his death expressed his unwillingness to go through with the contract which he and his two brothers had made with George T. Mercke. His wife, who is now the executrix of his will and the beneficiary thereunder, was violently opposed to his carrying out the agreement.

The chancellor granted appellee the relief sought, and directed the corporation to issue to her a certificate for 83 1/3 shares of stock. The chancellor found that two questions must be determined in reaching a decision in the case. The first was whether decedent, E. J. Mercke, made the contract, and the second was whether the contract, if made, was executed by George T. Mercke before it was abrogated or sought to be enforced. He found that the only proof of the contract was the evidence of R. L.

Mercke and C. C. Mercke, and he sustained exceptions to their depositions, and it followed, according to the views of the chancellor, that there was no proof of any contract. The chancellor also found from the evidence that it was quite possible that the contract, if made, was abrogated before it was executed by George T. Mercke.

If the evidence of C. C. Mercke and R. L. Mercke is incompetent, there is no evidence to establish the contract, but, if their evidence is competent, the contract is abundantly established, and the judgment of the chancellor is erroneous, unless the contract was unilateral and was abrogated by E. J. Mercke before it was performed by George T. Mercke. The serious question in the case is whether either C. C. Mercke or R. L. Mercke was testifying for himself in this suit. If he was testifying for himself, the evidence is incompetent under the provisions of subsection 2 of section 606 of the Civil Code, but if he was not testifying for himself, the evidence is competent, and, if his testimony was for the benefit of the corporation, he was testifying for himself. It is well settled that a shareholder in a corporation will not be permitted to testify concerning transactions between the corporation and a decedent. This, of course, is on the ground that the shareholder is interested in the corporation, and what affects the corporation affects him. The chancellor in his opinion cited the case of Bagby's Administrator v. American Surety Company of New York, 161 Ky. 78, 170 S. W. 492. In that case one of the employees defaulted, and the surety company on his bond paid the amount of the defalcation to the bank, and thereafter instituted suit against the estate of the employee to recover the amount which it had paid to the bank. This court held in that case that the claim of the surety company must be treated as one which had been assigned to it by the bank, and for that reason the shareholders in the bank could not testify in behalf of the surety company, as they were not competent to testify before the assignment of the claim.

The chancellor also cited the case of Evansville Railways Company v. Ligon's Administrator, 172 Ky. 631, 189 S. W. 898, but we find nothing in that case which is authority on the question of whether the testimony of these two witnesses was competent in the case under consideration. It is true that in that case this court restated the well-known rule that a stockholder in a corporation

has such pecuniary interest in the corporation as to disqualify him from testifying for it concerning any verbal statement of, or transaction with, a person who was dead when the testimony was offered to be given. The general rule does not meet the question confronting us in this case. The question, rather, is whether these two witnesses would be affected adversely by a judgment against the corporation under the pleadings in this case. If they had no pecuniary interest either individually or by reason of their being stockholders in the corporation, they were not disqualified from testifying. If the court should hold that there was no contract whereby George T. Mercke became entitled to a one-fourth interest in the corporation, their interest would be enhanced to one-third instead of one fourth, and, as individuals, each was testifying against his interest instead of for himself. A third of the value of the assets after returning to George T. Mercke the money which he had paid with interest thereon would be much greater than a one-fourth of the assets of the corporation, if it should retain as a part of its assets the money paid in by George T. Mercke. If the evidence is incompetent, it must be on some ground other than that he was testifying for himself. It is suggested by counsel for appellee that the stock had already been issued prior to the institution of this suit, and that these two witnesses had parted with any interest they had in the stock above 62½ shares each, and for that reason it could not be said they were testifying against their interest. If weight should be given to that argument, it is sufficient to say that each was not testifying in his own interest as his stock ownership would not be decreased by a judgment in favor of appellee.

While no judgment was entered for money against the corporation, still if there had been a judgment for money instead of a judgment for the stock, we cannot see that this would have changed the status of these witnesses. If the assets represented by the stock should be left with the company, a judgment for money could have been paid without lessening the financial interest of these two witnesses in the company.

The court should look through the shadow and find the substance in all cases like this. The real controversy was whether George T. Mercke should have 62½ shares of stock under the contract made with his brothers, or

whether he should have none of the stock and the other three should have 83 1/3 shares each. The corporation as such was not financially interested in this matter one way or the other. The appellee by the judgment of the lower court is entitled to receive 83 1/3 shares. If C. C. Mercke and R. L. Mercke should treat that as authority to repudiate the contract, and should do so, George T. Mercke would have no stock in the corporation. Clearly, then, they were testifying against their interest. If they should elect to perform the contract in so far as it was in their power so to do, they could take from the stock which they own enough to give George T. Mercke 62½ shares. This would throw the entire loss on them, and again we see their testimony was against their interest. We have reached the conclusion that their evidence was competent.

It is argued that the contract if made was unilateral, and therefore not enforceable. Such a rule cannot be invoked where the contract has been performed by the one who was not bound. Kelley et al. v. Ivyton Oil & Gas Company, 204 Ky. 804, 265 S. W. 309. Under the evidence in this case the contract had been fully performed by George T. Mercke before the institution of this action.

It is also argued that E. J. Mercke abrogated the contract before its performance by George T. Mercke. We do not so read the evidence, even if the evidence was competent. It is true that E. J. Mercke said on one or two occasions, in substance, that he felt like he was under no obligation to go through with the contract, or that he felt like George T. Mercke was not entitled to the stock, but such statements not made to the other party in interest are far from sufficient to establish an abrogation of the contract. George T. Mercke had given up his business, and had been engaged in the performance of his part of the contract for several years, when it is claimed that E. J. Mercke made these statements. Thereafter the business continued as usual, and he took no steps to bring home to George T. Mercke his intention to abrogate the contract.

Furthermore, it is argued that the contract was within the statute of frauds and therefore not enforceable. This argument is not sound. It was not impossible to perform the contract within a year. Myers v. Saltry, 163 Ky. 481, 173 S. W. 1138, Ann. Cas. 1916E, 1134; Fearon Lumber & Veneer Company v. Lawson's Ad-

ministrator, 189 Ky. 314, 224 S. W. 882; Frankfort & Cincinnati Railway Company v. Jackson, 153 Ky. 534, 156 S. W. 103; Ford Lumber & Mfg. Company v. Cobb, etc., 138 Ky. 174, 127 S. W. 763.

No good reason could be served by extending this opinion to greater length. The chancellor should have awarded to appellee 62½ shares of the capital stock in the Jefferson Woodworking Company, and no more. She is entitled to any rights which may have accrued to her by reason of her stock ownership to this extent. Further than this, the relief sought by her should be denied.

Judgment reversed, and cause remanded, with directions for proceedings consistent with this opinion.