**20TH CENTURY COAL COMPANY, Inc.,
Appellant,**

**v.**

**John P. TAYLOR, Appellee.**

Court of Appeals of Kentucky.

Nov. 12, 1954.

Rehearing Denied Feb. 25, 1955.

S. Hugh Dillin, Petersburg, Ind., Earl F. Martin, Hartford, for appellant.

Woodward, Bartlett & Catinna, Hartford, for appellee.

CLAY, Commissioner.

This suit was originally brought to obtain an accounting from defendant. By amended petition plaintiff prayed that he be adjudged the owner of an undivided one-half interest in certain coal lands of defendant. The judgment decreed a partial accounting and also adjudged plaintiff an interest in the land.

The claim is founded upon an alleged oral agreement entered into with the president of the defendant corporation. Plaintiff was an engineer with some experience in the development of coal fields, particularly for strip mining purposes. For several years prior to the date of the alleged agreement he had been test drilling what is known as the Panther Creek Coal Field in Daviess County. He succeeded in interesting Mr. Bryant, defendant's president, in this coal field.

Plaintiff claims that he entered into a binding contract with Mr. Bryant in January 1947. The terms of the contract were thus stated by the plaintiff in his testimony:

"Well, Mr. Bryant was supposed to pay the drilling expense, pay my personal expense, that was mileage going back and forth to the field and also furnish option money to get the field together, that is if it would continue that was as long as we thought it was still good and the results would be, if it was good and he disposed of it we would have a fifty-fifty split of it. * * *"

For several months after January 1947, the plaintiff did supervise the drilling of a number of test holes in the Panther Creek Coal Field. He kept logs, made reports to the defendant and furnished a map showing the results of his investigation of this property. In addition he obtained options in the name of defendant company for many parcels of land which made up the coal field.

Defendant furnished a drilling rig, and from time to time paid the plaintiff his personal expenses in accordance with statements submitted by him. In January 1948, Mr. Bryant gave the plaintiff a check for $1,000, which will be referred to later in this opinion.

Prior to the time plaintiff was given this last mentioned check, he had ceased performing services for the defendant, but the defendant continued test drilling the property and buying additional options. Eventually defendant took up these options and purchased the coal field, which consisted of some 2,000 acres. In December 1949 it leased the property to one Green and has been collecting royalties under this lease to the present time.

On this appeal the defendant presents 14 grounds for reversal. Passing for the moment the question concerning the nature of relief granted, we will briefly consider the significant issues raised with respect to the establishment of a binding contract.

■ The first question relates to whether or not there was sufficient evidence of an enforceable contract to support the Chancellor's finding to that effect. We have quoted above plaintiff's version of the agreement. The only real difference between the parties about this agreement is whether or not plaintiff was to receive anything at all for his services over and above his personal expenses. It is substantially defendant's position that plaintiff performed his services for the fun of it, but such a contention has an unnatural ring. Clearly plaintiff did undertake to perform his part of some bargain. That he was performing services for the defendant is established by the fact that

defendant paid all of his expenses, and advanced the money for the procurement of options which were taken in the name of the corporation.

The suggestion is made that even though the plaintiff may have been entitled to something, it would have been a most unusual and unconscionable contract if the plaintiff was to receive one-half the profits. We do not view the situation in this light. The parties entered into a highly speculative venture, and dividing the profits does not strike us as so unreasonable as to discredit plaintiff's version of the agreement. We certainly cannot reach the conclusion that the Chancellor's finding with respect to the existence of this contract is clearly erroneous.

■■ The contention is made that the contract was vague and indefinite, and lacked mutuality. While these objections to the agreement may have been well founded as of the time the arrangement was originally made between the parties, their subsequent actions show that the contract, particularly with respect to the plaintiff's obligations thereunder, was definite and certain. He performed, in good faith and with defendant's consent and cooperation, beneficial services for it in testing and locating the field. If his duties were originally uncertain and indefinite, his acts show that he recognized specific obligations, and defendant made no complaint with respect to the manner of his performance.

Assuming the contract lacked mutuality at its inception, the initial want of mutuality is not fatal if the party who is not bound has performed his duties thereunder. Jefferson Woodworking Co. v. Mercke, 222 Ky. 476, 1 S.W.2d 532. Recognizing this principle of law, defendant contends that plaintiff did not fully perform his part of the agreement and therefore does not come within the exception. While the plaintiff did not do everything he could have done with respect to the testing and acquisition of the coal field, it appears that any failures on his part in this connection were due to the acts of the defendant.

Plaintiff testified in substance that after his work had proved the value of the field and the options he had acquired sufficiently tied it up, Mr. Bryant told him to hold up and not to do anything more. As the evidence for plaintiff indicates, it is reasonably inferable that Mr. Bryant and the defendant corporation, after accepting substantial services performed by the plaintiff, attempted to squeeze him out of the prospective profits which could be anticipated from a disposition of the field. One party may not successfully accuse the other of failure to perform when the former does not permit the performance. Williams, Kohler & Barrier v. Yates, Ky., 113 S.W. 503; In re Pure Rock Asphalt Co., D.C., 28 F.Supp. 685.

The question of the statute of frauds is raised. It is claimed that the contract was not to be performed within a year and was therefore unenforceable under KRS 371.010(7). It is evident, however, that the contract could have been performed within a year, which removes it from the requirements of the statute. East Tennessee Telephone Co. v. Paris Electric Co., 156 Ky. 762, 162 S.W. 530. It is also argued that the contract was within the statute of frauds, KRS 371.010(6), if it related to the sale or lease of real estate. As a general proposition this statute contemplates a sale or lease as between the parties to the contract. It has been held not to apply to a profit sharing agreement such as the one here in controversy. See Jones v. Nickell, 297 Ky. 81, 179 S.W.2d 195, and Whitsell v. Porter, 309 Ky. 247, 217 S.W.2d 311.

The defendant further contends there was an accord and satisfaction because about a year after the agreement was made the plaintiff accepted a $1,000 check from the defendant. We do not think the evidence would justify a finding that this payment was given to compromise the plaintiff's claim. The plaintiff identified the payment as an advance on expenses to which he would be put in an attempt to sell the property, and his subsequent actions indicate he was undertaking to effect such a sale. The Chancellor was justified in accepting the plaintiff's version of this subsequent transaction.

It is next contended the defendant corporation was not bound by the acts of its President, Mr. Bryant. While it is true that ordinarily a corporation only acts through its board of directors, it appears from the evidence that Mr. Bryant was in effect the corporation and that he handled all of its important business affairs. In addition, it is shown that the payments made to the plaintiff were by checks of the corporation, that the options were taken in its name, and that it accepted all of the benefits of the plaintiff's services. Under such circumstances the corporation will not be heard to say that it is not bound under the agreement made on its behalf and for its benefit. See Seaboard Oil Co. v. Huntsman, 196 Ky. 758, 245 S.W. 860, and Southeastern Land Co. v. Jonnard, 198 Ky. 504, 249 S.W. 789.

We finally come to a serious jurisdictional question, which involves the power of the court to adjudge the plaintiff an interest in land situated wholly in another county. Originally this action was brought for an accounting, and there can be no question that the circuit court had jurisdiction to grant the relief prayed. However, the plaintiff by amended petition asserted an undivided one-half interest in defendant's coal field and requested that such half interest be conveyed to him. In the judgment the Chancellor decreed an accounting, but went further and directed the defendant to convey to the plaintiff a one-half undivided interest in and to "the tracts of land described in the record". They were all located in another county.

While it is true that in certain cases we have held that the court of one county may adjudge a lien upon or a sale of land located in another county where the adjudication with respect to the land is incidental to the subject matter of the action, as in Doty v. Deposit Building & Loan Ass'n, 103 Ky. 710, 46 S.W. 219, 47 S.W. 433, 43 L.R.A. 551; Kentucky Utilities Co. v.

Steenman, 283 Ky. 317, 141 S.W.2d 265; Crawford v. Crawford, 286 Ky. 105, 149 S.W.2d 778, we think this case is in an entirely different category. By the amended petition plaintiff asserted a new claim which required an independent adjudication that he was a joint owner of defendant's land. This phase of the proceeding could only be initiated in the county where the land is situated. See Emmons v. Lexington & Carter County Min. Co., 112 Ky. 91, 65 S.W. 593; Bingham v. Asher, 165 Ky. 53, 176 S.W. 343; Britton v. Davis, 268 Ky. 7, 103 S.W.2d 665; Smith v. Wells, 271 Ky. 373, 112 S.W.2d 49.

 Even were we to assume the court had jurisdiction to enter the judgment affecting the title to defendant's land, the record is completely barren of any evidence which would justify such an adjudication. The plaintiff has made no contention that his contract gave him an interest in this property and he has neither alleged nor proven any other facts which would authorize the Chancellor to so decree. It is possible that further remedial proceedings may justify subjecting defendant's coal field to the satisfaction of plaintiff's claim, or adjudging it security therefor, but there is nothing in the record on which to base a judgment of that nature at this time. For this reason the judgment must be reversed.

The judgment is reversed to the extent that it adjudges the plaintiff any interest in the lands of the defendant, and is remanded for further proceedings consistent with this opinion.