# West v. King.

(Decided March 16, 1915.)

## Appeal from McCreary Circuit Court.

1. Guaranty—Statute of Frauds—Verbal Contract—When Original.— Where a person is induced to purchase stock in a corporation by the request and verbal promise of a stockholder therein, guaranteeing that he would receive certain dividends thereon, payable in advance, and that if, at the end of any year, the purchaser became dissatisfied with his stock, he would take it off his hands at its par value, such promise is an original and not a collateral obligation, and is not an agreement to answer for the debt, default or miscarriage of another. It is, therefore, not required by the statute of frauds to be in writing.

2. Contracts—Not to be Performed Within a Year—Statute of Frauds. —The statute of frauds does not apply to a contract which, though indefinite as to time of performance, is capable of being performed by one of the parties within a year, and is so performed.

3. Contracts—Consideration.—The subscription and payment for stock in a corporation is sufficient consideration for an agreement on the part of one inducing the purchase of said stock, guaranteeing to the purchaser certain dividends and agreeing to take the stock off his hands if he is dissatisfied with it at the end of any year.

4. Judgment—Demurrer—Res Judicata.—A judgment sustaining a demurrer to a petition, where the facts are well pleaded, is an adjudication that the facts stated no cause of action, and is a bar to another action for the same cause.

5. Appeal and Error—Judgment—Reversed in Part.—A judgment, otherwise proper, may be reversed with directions to exclude certain erroneous items, definitely ascertained, without being reversed for a new trial.

STEPHENS & STEELY for appellant.

W. N. FLIPPIN and H. C. GILLIS for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

In June, 1908, plaintiff, Burrell King, purchased five shares of stock in the Pine Knot Banking Company. Claiming that he was induced to purchase the stock by the defendant, John West, who guaranteed that he would receive six per cent. dividends thereon, payable in advance, and that if, at the end of any year, he became dissatisfied with his stock, he (West) would take the stock off his hands at its par value, plaintiff brought this action to recover the par value of the stock and certain unpaid dividends. In addition to denying the agreement, defendant pleaded the statute of frauds and *res judicata*. A trial before a jury resulted in a verdict and judgment for plaintiff. Defendant appeals.

According to the evidence for plaintiff, the Pine Knot Banking Company was organized in the year 1906, with a capital stock of $15,000, divided into 150 shares of the par value of $100 each. Defendant purchased five shares of the stock, and was elected a director. For some time he sought to induce plaintiff, his father-in-law, to take stock in the bank. Plaintiff declined to do so on the ground that he knew nothing about the banking business. Finally, in January, 1908, on the faith of the promise of defendant that he would guarantee that the stock would pay plaintiff six per cent. interest in advance, and that he would, at the end of any year, take the stock off plaintiff's hands at its par value if plaintiff desired to dispose of it, plaintiff purchased the stock in question. The stock was dated September 23, 1907. He thereupon paid the cashier the sum of $250, and the cashier, at the direction of defendant, paid plaintiff $15, the interest on said sum for one year in advance, and

delivered to him the certificate of stock. On September 23, 1908, plaintiff paid the remaining sum of $250, and upon the direction of the defendant, the cashier paid plaintiff $30 interest, it being the interest on $500 for one year in advance. The stock so sold, together with fifteen or twenty other shares, stood in the name of Barber McAfee, the cashier. McAfee had executed his note to the bank for the stock, with the understanding that it was to be carried by him until the stock was disposed of. Both McAfee and plaintiff testified to the foregoing facts.

On the other hand, defendant denies that he tried to induce plaintiff to purchase the stock, or that he made the promise relied on by plaintiff. He claims that the stock was still in the name of McAfee and was his property, and the sale was made by McAfee, and that he had no interest in the stock and no connection whatever with the transaction.

As there was sufficient evidence to take the case to the jury, and as the instructions are as favorable as defendant could have demanded, there is left for consideration only the validity of the alleged agreement and the plea of *res judicata*.

It is first insisted that the undertaking of the defendant was a mere oral agreement to answer for the debt, default or miscarriage of another, and, therefore, clearly within the statute of frauds. A decision of this question depends on whether defendant's promise was original or merely collateral. If original, it is not within the statute; if collateral, it is. It is not contended that the bank actually obligated itself to pay defendant in advance, or to redeem the stock at par. Nor was it under any implied obligation to do so. The bank is not liable for dividends until they are earned and declared. It is never under any implied obligation to redeem its stock. After the purchase of the stock the bank owed to plaintiff no duty except the general obligation which it owed to all shareholders, to use reasonable care and prudence to conduct its affairs in a fair and impartial manner. There being no substantive liability on the part of the bank, either express or implied, there was no debt, default or miscarriage for which the defendant agreed to answer. He alone made the contract. That contract induced the purchase. Under these circumstances the contract was original and not collateral.

This precise question was before the court in the case of Kilbride v. Moss, 113 Cal., 432, 54 A. S. R., 361, where it was held that if a person is induced to purchase stock in a corporation by the request and verbal promise of a stockholder therein, that he will return to the purchaser the money paid for the stock if it should become worthless, such promise is not an undertaking to answer for the debt, default or miscarriage of another, but is an original contract which binds the promisor personally. To the same effect is Crook v. Scott, 65 App. Div., 139, affirmed 174 N. Y., 520, 66 N. E., 1106.

It is next insisted that the contract is within the statute of frauds because the agreement was oral and was not to be performed within one year from the making thereof. In the recent case of East Tennessee Tel. Co. v. Paris Electric Co., 156 Ky., 762, the authorities on this question are fully reviewed, and it was there held that the statute has no application to a contract which, though indefinite as to time of performance, is capable of being performed by one of the parties within a year, and is so performed. Plaintiff's part of the contract in this case was to subscribe for and pay for the stock. This he did within a year from the time the contract was made. Having executed his part of the contract, the agreement was no longer executory, and the statute does not apply. Dant v. Head, 90 Ky., 255.

There is no merit in the contention that the agreement in question was without consideration. Consideration may consist of a benefit to the promisor or a detriment to the promisee. Plaintiff's subscription and payment for the stock constituted a sufficient consideration for the defendant's promise. Morehouse v. Crangle, 36 Ohio St., 130, 38 Am. Rep., 564; Lemaster v. Burckhart, 2 Bibb., 25; Hill v. Smith, 21 Howard, 283.

The next question is the plea of *res judicata*. It appears that on June 28, 1911, plaintiff brought suit on the same contract against the defendant, John West. and Barber McAfee. In that suit he sought to recover dividends amounting to $90 for the last three years, which had not been paid. The suit was brought in a justice's court and afterwards transferred to the quarterly court. A demurrer was sustained to the petition and the petition dismissed. The judgment on the demurrer has never been set aside or reversed, but is in full force and effect. In the recent case of Randolph v.

Snyder, 139 Ky., 159, the court held that since a judgment on demurrer where the facts are well pleaded is a bar to a second suit no less than one rendered on the merits, a judgment rendered on the sustaining of a general demurrer to plaintiff's petition was an adjudication that the facts stated no cause of action, so that plaintiff could not, while that judgment was in force, prosecute another action for the same cause. In the case in the quarterly court substantially the same allegations were made as in the petition in this case. It follows that the facts were well pleaded. That being true, the judgment is conclusive of plaintiff's right to recover in this action the same items involved in that action. Plaintiff was adjudged a recovery of $500, with six per cent. interest from September 23, 1907, subject to a credit of $15 paid September 23, 1907, and a further credit of $30 paid September 23, 1908. The effect of the judgment is to include the three items of interest of $30 each, due September 23, 1909, September 23, 1910, and September 23, 1911, respectively, which are concluded by the judgment in the quarterly court. As the judgment is otherwise proper, and these erroneous items may be excluded therefrom, the judgment will not be reversed for a new trial, but with directions to modify the judgment so as to give defendant credit for the three items of interest above set out.

Judgment reversed and cause remanded, with directions to enter judgment in conformity to this opinion.