In the Matter of the Application of MINNIE SEILER, Appellant, a Stockholder in PARAGON TRADING CORPORATION, Respondent, for Appointment of Three Persons to Appraise the Value of Her Stock.

In the Matter of the Application of LEOPOLD SCHORSCH, Appellant, a Stockholder in PARAGON TRADING CORPORATION, Respondent, for Appointment of Three Persons to Appraise the Value of His Stock.

First Department, November 17, 1933.

*Herbert D. Cohen* of counsel [*Morris D. Kopple*, attorney], for the appellants.

*Nathan D. Perlman* of counsel [*Samuel Mezansky* with him on the brief; *Blau, Perlman & Polakoff*, attorneys], for the respondent.

TOWNLEY, J. On March 28, 1933, at a stockholders' meeting, a resolution was adopted, over the objection of the appellants, to retire the preferred stock of the respondent corporation and issue in its place new preferred stock. The objecting stockholders accordingly demanded the appraisal to which they claimed to be entitled. Both petitioners owned substantial quantities of the preferred stock which is being withdrawn.

The question presented is whether petitioners are entitled to the relief demanded. Subdivision 12 of section 38 of the Stock Corporation Law provides as follows: " If the certificate alters the

preferential rights of any outstanding shares, any holder of such shares not voting in favor of such alteration, within twenty days after the meeting at which such alteration was authorized, may object thereto and demand payment for his shares, and thereupon such stockholder or the corporation may have his shares appraised as provided in section twenty-one, all of the provisions of which section shall in all respects be applicable."

The preferential rights attaching to petitioners' stock are as follows:

(1) The class A stock is entitled to fixed dividends payable out of the surplus profits of eight per cent per annum, and no more.

(2) The class B and class C stocks are entitled to fixed dividends payable out of the surplus profits at the rate of seven per cent per annum, and no more.

(3) The dividends upon the preferred stock are cumulative and no dividend may be paid upon or set apart for the common stock unless all arrears of dividends on the preferred stock are paid.

(4) The dividends upon the preferred stock are payable semi-annually on the first days of December and June, or on such other dates as the directors may determine.

(5) Upon dissolution or liquidation or other distribution of capital the preferred stock is entitled to be paid in full at par and accrued dividends before any payment is made upon the common stock.

(6) The sole voting power is vested in the common stock. But if four semi-annual dividends on the preferred stock shall be in default, the entire voting power for the election of directors and the amendment of the by-laws are vested exclusively in the preferred stock.

The preferential rights of the new preferred stock are as follows:

(a) The class A stock is entitled to fixed dividends payable out of surplus profits at the rate of eight dollars per annum, and no more.

(b) The class B and class C stocks are entitled to fixed dividends payable out of the surplus profits at the rate of seven dollars per annum, and no more.

(c) The dividends are cumulative upon the preferred stock and no dividend shall be payable upon or set apart for the common stock unless either all of the preferred stock shall have been redeemed, or " a fund of $125.00 shall be accumulated and held in reserve for every share as security for the payment of such preferred stock, after all accumulated dividends are fully paid."

(d) " If after providing for the payment of full dividends accumulated since January 1, 1932, and a fund equal to $125.00 for every

share as security for the payment thereof, there shall remain any surplus profits " such dividends may be paid upon the common stock from time to time out of said surplus profits as the board of directors shall determine and the preferred stock " shall not be entitled to participate in any such dividend."

(e) Upon dissolution or liquidation the preferred stock is entitled to be paid in full at $100 per share plus accrued dividends, including any accrued dividends on the original issue of the preferred stock.

(f) The sole voting power is vested in the common stock. But if four semi-annual dividends on the preferred stock shall be in default, the entire voting power for the election of directors and the amendments of the by-laws are vested exclusively in the preferred stock.

(g) It is further provided in the amendatory certificate that until the preferred stock shall be redeemed in full, or a reserve fund of $125 per share set up and all accumulated dividends paid, no officer shall receive a salary in excess of $7,500 per annum; and it is further provided that no preferred stock shall be sold for less than $100.

These changes involved not only a different financial set-up for the preferred stock but a retirement of the old preferred stock and the substitution of new in the place thereof. The court at Special Term held that an examination of the proposed certificate shows that no preferential rights of the preferred stockholders as to assets or dividends will be impaired. The elaborate arguments of counsel, however, demonstrate how opinions may differ concerning the effect of this amendment. This very difference was sufficient to justify the granting of the application. The Court of Appeals in *Matter of Silberkraus* (250 N. Y. 242, 246) said: " When, however, the result of the alteration is not entirely clear, the wishes of the stockholder rather than the conception of the courts should prevail. Let him be the one to decide whether he shall avail himself of the opportunity to acquire new stock which he deems of lesser worth or whether he shall take the appraised value of his outstanding shares. Here a serious question arises whether appellants are benefited by the change. The majority stockholders think they are, but these appellants take a different view. * * * Since the question of benefit is arguable, the better result can be attained by intrusting the stockholder with power to decide. That, we think, is the purpose of the statute. (*Matter of Timmis*, 200 N. Y. 177.) "

The statute does not require that the change shall be detrimental to the dissenting stockholders. All that is required is that there should in fact be a change. (*Matter of Dresser*, 247 N. Y. 553.)

Here we are concerned not alone with a change in the preferential rights of the stockholders, but their stock and the preferences attached thereto are completely destroyed and new stock substituted therefor. The Court of Appeals passed on a similar situation in *Matter of Silberkraus* (*supra*) when the court in its opinion said (at p. 244): " Preferential rights are such rights as attach to shares possessing a preference. On the retirement of a class of stock all rights adhering to the shares of that class are destroyed. When a class ceases to exist every preferential right attached to it falls. Neither a preference nor a preferential right can survive the thing to which it is appended. * * * So viewing the right as separate from value, it may be either beneficially or disadvantageously changed. Whenever it is changed in either way, it is altered, and when the change is effected by the amended certificate, a preferential right is altered by that certificate."

On the merits, therefore, the applications should have been granted.

The respondent also questions the regularity of the proceeding and claims that the same is prematurely brought because at the time application was made the proposed amended certificate of change had not been filed. The statute contains no such requirement. Section 21 of the Stock Corporation Law, which limits the time within which the proceeding may be instituted, requires that it be brought within sixty days after the meeting adopting the change in the stock. If the contention of the respondent were to be upheld, the corporation might by withholding the filing of the certificate for sixty days defeat the stockholders' right to have the stock appraised. *Matter of Millard* (221 App. Div. 113; affd., 246 N. Y. 546) and *Matter of O'Hara* (133 Misc. 184) are not contrary to this interpretation of the law. In those cases, at the time the proceedings were instituted, the resolutions had been withdrawn and the transactions abandoned. No purpose would have been served by continuing with an appraisal under those conditions. In the case before us, however, no intention to rescind the action proposed is shown. The proceeding is, therefore, timely brought.

The orders should be reversed, with twenty dollars costs and disbursements to the respective appellants, and the motions granted.

FINCH, P. J., MARTIN, O'MALLEY and GLENNON, JJ., concur.

In each proceeding: Order reversed, with twenty dollars costs and disbursements, and motion granted. Settle order on notice.