LOUIS GOEBBEL, Plaintiff, *v.* ALBERT B. GROSS and Others, Defendants.

City Court of New York, New York County, May 10, 1934.

*Charles Weg*, for the plaintiff.

*Pollack, Schachner & Horowitz* [*Benjamin D. Pollack* and *Arthur M. Schachner* of counsel], for the defendants.

NOONAN, J. On May 2, 1931, a tripartite agreement under seal was entered into between the plaintiff, the three individual defendants and a corporation known as Grum-Ko Silk Corporation. By the terms of this agreement the plaintiff was hired by the corporation as a salesman at a certain fixed salary. In another provision of the agreement the plaintiff agreed to purchase from the corporation fifteen shares of its capital stock of the par value of $100 per share and to pay for this stock the sum of $2,500 upon the delivery of the stock certificate. In consideration of such investment by the plaintiff the corporation agreed to elect him an officer and director of the corporation and to retain him as such during the life of the agreement. The agreement provided for its termination on December 31, 1932, but also stated that it might be renewed automatically from year to year unless either of the parties gave written notice

of termination to the other at least ninety days prior to the expiration of any year.

Paragraph 5th of the agreement is the one upon which this controversy hinges. It states as follows: " Upon the termination of this agreement on December 31, 1932, or at any time prior or subsequent thereto, irrespective of the cause therefor, the parties of the third part [the individual defendants in this action] agree to purchase from the party of the second part [the plaintiff] the said fifteen shares of stock purchased by him at either a minimum price of $2,500, or at the option of the party of the second part [the plaintiff] at the actual book value of the physical assets of the said corporation at the time of such sale, excluding any value for leases, copyrights, patents or goodwill."

At the time this agreement was made and thereafter the three individual defendants (the parties of the third part) were in sole control of the corporation and were officers, directors and stockholders thereof. At that time the capital stock of the corporation consisted of 200 shares of common stock each of the par value of $100, of which 100 shares were outstanding. Pursuant to the agreement, the plaintiff entered into the employment of the corporation and also purchased the fifteen shares of stock at the price of $2,500, receiving a certificate therefor on May 5, 1931. The plaintiff was also elected as a director. The plaintiff continued in the employ of the corporation until December 31, 1933, when the agreement in question came to an end. On January 2, 1934, written demands were made upon the defendants by the plaintiff to purchase the stock for the minimum price of $2,500, as provided in the agreement. These demands were rejected. On December 31, 1931, while the agreement was in effect the plaintiff received a stock dividend of fifteen shares of the Grum-Ko Silk Corporation. During the term of the plaintiff's employment and while he remained the owner of the fifteen shares of stock certain changes in the structure of the corporation took place.

On or about June 14, 1933, there was filed with the Secretary of State, pursuant to section 36 of the Stock Corporation Law, a certificate of increase and reclassification of the capital stock of the corporation, and in August of the same year a further certificate of reclassification of the stock was filed in the same office. By the first certificate filed the capital stock, which then consisted entirely of common stock, was increased from $20,000 to $50,000, and the number of authorized shares was increased from 200 to 500, each of the par value of $100. One hundred and fifty shares of the newly-authorized 300 shares were common stock and the remaining 150 were authorized as stock preferred as to dividends on an annual

cumulative seven per cent basis. By the second certificate filed on August 10, 1933, the holders of the preferred stock became entitled to receive the par value of their stock in the event of the liquidation or dissolution of the corporation before the distribution of any part of the capital among the holders of the common stock.

Notwithstanding these changes in the corporate structure, the plaintiff continued in the employment of the corporation. The defendants contend that the plaintiff consented to these changes which the plaintiff denies. It is admitted by the defendants that the plaintiff did not surrender the shares of stock which he held in exchange for the new stock.

The right of the majority of the stockholders to increase and to recapitalize the capital stock of the corporation pursuant to section 36 of the Stock Corporation Law cannot be assailed. That it was done in accordance with the statute is not disputed.

Whether the plaintiff expressly consented to the authorized changes is not important. That he gave an implied consent must be concluded from his failure to avail himself of the right to an appraisal of his shares of stock given to him by sections 38 and 21 of the Stock Corporation Law. Section 38, subdivision 12, of the Stock Corporation Law provides as follows: " If the certificate alters the preferential rights of any outstanding shares, any holder of such shares not voting in favor of such alteration within twenty days after the meeting at which such alteration was authorized, may object thereto and demand payment for his shares, and thereupon such stockholder or the corporation may have his shares appraised as provided in section twenty-one, all of the provisions of which section shall in all respects be applicable."

Plaintiff took no action with respect to the right conferred by this section. There can be no question that the preferential rights of the fifteen shares of stock purchased by him and the additional fifteen shares which he received as a stock dividend on December 31, 1931, were altered by the new scheme of capitalization. (*Matter of Silberkraus*, 250 N. Y. 242; *Matter of Seiler*, 239 App. Div. 400.)

Plaintiff's failure to take advantage of the appraisal given by the statute results in his having in his possession thirty shares of common stock of the Grum-Ko Silk Corporation which he may surrender in return for thirty shares of the newly-authorized common stock which is subject to the rights of the newly-authorized preferred stock.

Defendants claim that thirty shares of the new issue of common stock were actually sent by registered mail to plaintiff by the corporation. Plaintiff appears to have retained these shares of

new stock while at the same time retaining his shares of the old issue.

The theory of the plaintiff's cause of action is breach of contract. That there was ample consideration for the promise of the defendants to purchase the fifteen shares of stock cannot be disputed. The entry of the plaintiff into the employment of the corporation and the purchase by him of the fifteen shares of stock from the corporation at the price of $2,500 was sufficient consideration for the promise of the defendants to purchase the stock from the plaintiff as provided in paragraph fifth of the agreement. (*Meyer* v. *Blair*, 109 N. Y. 600; *Ott* v. *Wesel*, 219 id. 671; *Baird* v. *Hagen*, 143 App. Div. 679; *Crook* v. *Scott*, 65 id. 139; affd., 174 N. Y. 520; *Lynch* v. *Murphy*, 81 Misc. 180; affd., 165 App. Div. 903; affd., 221 N. Y. 559; *Pfeiffer* v. *Mansbach*, 178 N. Y. Supp. 482.)

Plaintiff must fail, however, because he is unable to perform his part of the contract. The shares of stock which he now tenders to the defendants on his demand for the payment of $2,500 are no longer existent. They have been swallowed up in the creation of new stock, entirely different in its makeup from the old. The subject-matter of the contract has been destroyed and this destruction has come about lawfully and in accordance with statutory approval. (*Merchants-Citizens National Bank* v. *Mauser*, 297 Penn. St. 399.) The old stock has been replaced by a new issue of common stock which is in essential respects unlike the old stock, subject to rights of holders of a new issue of preferred stock. The old stock is lifeless even though the shell of it in the form of a certificate is still held by the plaintiff. (*Matter of Silberkraus, supra.*) The tender of the new stock to the defendants in place of the old would be unavailing. The defendants did not contract to purchase the new stock, which are shares of a corporation differently capitalized. (*Choate* v. *Beebe*, 143 App. Div. 683.) Their undertaking was to purchase the old stock, and the plaintiff cannot tender such stock as it originally existed. The plaintiff had his rights and has lost them by his failure to secure an appraisal. He cannot hold the defendants accountable. There is no claim that any fraud was perpetrated by the defendants.

All of these facts above set forth appear on a motion made by the plaintiff for summary judgment. For the reasons stated this motion is denied. Order signed.