## Pilcher v. Stadler.

### Henry Pilcher's Sons, Inc., v. Same.

Jan. 20, 1939.

**452**

W. SCOTT MILLER and ROBERT E. HOGAN for appellant.

LOUIS BROWNSTEIN, BERNARD SHERR and SHACKELFORD MILLER, JR., for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER— Affirming in part and reversing in part.

W. F. Stadler, April 1, 1936, filed a common law action in the Jefferson Circuit Court against W. E. Pilcher, wherein on June 1, 1937, he recovered judgment for $3330 against Pilcher. This action was for an alleged breach of contract by reason of Pilcher's failure to re-purchase from him certain stock in Henry Pilcher's Sons, Incorporated, which he had bought from W. E. Pilcher for $3330 upon the alleged agreement that Pilcher would re-purchase this stock from Stadler, paying him the sum Stadler paid Pilcher for the same, any time Stadler severed his connection with the corporation. Being successful in this common law action, Stadler on September 1, 1937, filed a petition in equity against Henry Pilcher's Sons, Incorporated, alleging he was a stockholder in the corporation and as such had made demand to examine the books and records of the company, which was refused him, and in this action he sought to enjoin the corporation from refusing to allow him and his duly authorized agent to examine the corporation's records. The chancellor upon a final hearing granted the injunction, and the corporation then moved the chancellor to stay the injunction pending the appeal of the common law action, which motion the chancellor overruled and only stayed the injunction for 20 days to allow the corporation to make a motion in this court to modify or revise the order of injunction. Upon motion being made in this court, an order was entered suspending the injunction pending the appeal, and on motion of the corporation this court ordered that the record in the common law action and in the equity suit be placed together and the two cases heard as one.

In this opinion W. F. Stadler, the plaintiff below in both actions, will be referred to as the plaintiff; W. E. Pilcher, the defendant below in the common law action, will be referred to as the defendant; and Henry Pilcher's Sons, Incorporated, the defendant below in the equity action, will be referred to as the corporation.

The defendant is, and for a good many years has been, president of the corporation, which is engaged in the manufacture of pipe organs at Louisville, and its articles of incorporation show he subscribed to 930 shares of its preferred stock and 2050 shares of its common stock. The plaintiff was an old and trusted employee of the corporation, having been connected with it for about 35 years as a skilled mechanic, and he and his wife had their life saving of some $3500 invested in the Avery Association. In 1925, defendant sold plaintiff 37 shares of his individual common stock in the corporation at $90 per share, or $3330, and plaintiff withdrew his savings from the Avery Association to pay therefor.

Plaintiff claims that at the time he purchased this stock from defendant he and defendant entered into an oral contract wherein it was agreed plaintiff would not sell his stock to any one without first giving defendant an opportunity to buy it, and it was further agreed that the defendant would, at any time plaintiff severed his connection, voluntarily or involuntarily, with the corporation, buy plaintiff's stock, paying him the full amount plaintiff had invested therein. The common stock failed to earn dividends and in 1927 plaintiff upon recommendation of defendant converted it into 8 per cent preferred stock. The corporation failed to earn dividends upon its preferred stock but during the years 1925 and 1926 the defendant out of his own pocket paid the dividends on this preferred stock. When the depression strangled the business of the country it was seen the corporation would get so far behind in payment of dividends, which were cumulative, on this preferred stock that the corporation could never hope to pay them, the whole capital structure of the corporation was reduced to 57½ per cent of its former value; and in 1933 new preferred stock was issued on this reorganized basis, the dividend being reduced thereon from 8 per cent to 6 per cent. Plaintiff claims when he converted his common stock into 8 per cent preferred stock in 1927, he and the defendant renewed their agreement referred to above concerning defendant repurchasing plaintiff's stock; and plaintiff further claims that in 1933, when the capital structure of the corporation was reduced to 57½ per cent of its former value, at which time plaintiff converted his 8 per cent stock into 6 per cent stock, he and the defendant for the second time renewed their

agreement relative to defendant repurchasing plaintiff's stock.

Defendant, by his pleadings and testimony, denied ne ever entered into any agreement with plaintiff to repurchase the common stock or the 8 per cent preferred stock, or the 6 per cent preferred stock, for the amount plaintiff 'had invested in the corporation, or to repurchase any of this stock for any sum; or that it was agreed between plaintiff and himself, plaintiff would give him the refusal of the right to purchase this common stock or either of the preferred stocks. Defendant admitted the certificate representing the common stock contained a provision it could not be sold to any person until the then stockholders of the corporation were given the refusal of it, but there was no such provision relative to either the 8 per cent or 6 per cent preferred stock.

Defendant argues at considerable length that the pleadings of plaintiff failed to allege there was any contract wherein defendant agreed to repurchase this 6 per cent preferred stock, although plaintiff introduced proof defendant, at the time the 6 per cent preferred stock was issued, agreed to repurchase this very stock for the amount plaintiff had originally invested in the stock of the corporation, and this proof availed him not because of his failure to plead this specific agreement relative to the 6 per cent preferred stock. Defendant also argues that the plaintiff only alleged there was an agreement wherein defendant was to repurchase the 8 per cent preferred stock and that as a pleading is construed most strongly against the pleader, the substituted petition will not support the verdict and resulting judgment. We agree with the defendant that proof unsupported by pleading is no benefit to a litigant. Utterback's Adm'r v. Quick, 230 Ky. 333, 19 S. W. (2d) 980; Louisville & Nashville Railroad Company v. Campbell, 237 Ky. 182, 35 S. W. (2d) 26. We also agree with the defendant, a pleading is always construed most strongly against the pleader. Clark v. C., N. & O. T. Railroad Company, 258 Ky. 197, 79 S. W. (2d) 704; McBride v. Alles et al., 222 Ky. 725, 2 S. W. (2d) 391. But turning to plaintiff's amended and substituted petition we find he alleges the defendant promised and agreed to repurchase from him, at any time that he severed his connection with the corporation, any stock plaintiff

bought in the corporation and defendant agreed to pay plaintiff the full amount plaintiff had paid for this stock. Plaintiff further alleges this agreement was reentered into with him by the defendant when plaintiff converted his common stock into 8 per cent preferred stock. While plaintiff does not allege in so many words this same agreement was again entered into with him by defendant in August, 1933, when the 8 per cent preferred stock was converted into the 6 per cent preferred stock, it was not necessary for plaintiff to allege a renewal of this agreement at that particular time because the 6 per cent preferred stock was but a continuation of the 8 per cent preferred stock with merely a reduction of 2 per cent on its return; also, plaintiff had already alleged in this pleading defendant's agreement to repay plaintiff the full amount plaintiff had invested in any stock of the corporation upon plaintiff's severing connection therewith. Plaintiff further alleges in this pleading this stock was of no value; that he had severed his relations with the corporation and had made demand upon defendant to comply with his agreement and repurchase the stock in the corporation plaintiff had bought and defendant refused to do so, and by thus breaching his contract he had damaged plaintiff in the sum of $3330. These allegations in this pleading clearly set out a contract between plaintiff and defendant and just as clearly set out defendant's breach thereof.

The defendant contends the converting of this 8 per cent preferred stock into 6 per cent preferred stock, and the reduction of the capital structure of the corporation, destroyed the subject matter of the alleged contract, and plaintiff has no cause of action to compel him to buy 6 per cent preferred stock in a corporation whose capital structure has been reduced to 57½ per cent of its former value. In support of his position defendant cites the case of Goebbel v. Gross, 151 Misc. 512, 271 N. Y. S. 727 (on motion for summary judgment) and Goebbel v. Gross, 153 Misc. 637, 275 N. Y. S. 308 (on final hearing).

In that case plaintiff had purchased 15 shares of stock for $2500 in a corporation known as the Grum-Ko Silk Corporation, on an agreement with defendants that they would purchase this stock from him at this same figure upon the termination of their contract of plaintiff's employment, December 31, 1932, or at any

time prior or subsequent thereto. At the time this agreement was made the capital structure consisted of 200 shares of common stock of the par value of $100, of which 100 shares were outstanding. During the year 1933 the capital stock was increased from $20,000 to $50,000, represented by an increase of 300 shares, of which 150 shares were 7 per cent preferred, and this preferred stock in the event of liquidation or dissolution of the corporation was to be first paid out of the assets before the common stock shared therein. In the first part of 1934, the plaintiff made demand upon defendants to purchase his stock and the court held defendants were justified in refusing to buy plaintiff's stock because the original stock, which was the subject matter of the contract, no longer existed and had been replaced by a new issue of common stock, which unlike the old, was subject to the rights of the holders of the new preferred stock. In this case, reported in 275 N. Y. S. 308, the court on page 311 wrote:

"It may be added that in no event would plaintiff be permitted to show at the trial of the present action that the contract was not one for the purchase of plaintiff's stock by defendants, but rather for the return to the plaintiff of his investment of $2,500 in the corporation, for the reason his action is based solely upon an alleged breach of defendants' agreement to buy his stock.

"It is beyond the possibility of dispute that the agreement in question is one of purchase, not repurchase; the defendants agreed to buy of plaintiff stock originally acquired by him, not from the defendants, but from the corporation."

In the case at bar it is admitted plaintiff bought his stock from the defendant, who owned it individually, and not from the corporation. Plaintiff alleged and proved the contract was to the effect defendant would repurchase the stock plaintiff bought of him at any time plaintiff severed his connection with the corporation and defendant would pay plaintiff the full amount plaintiff had paid to him in purchasing defendant's stock. It is clear the rule cited in Goebbel v. Gross, supra, has no application here because in the case at bar the plaintiff both alleged and proved defendant not only agreed to repurchase plaintiff's stock which he had sold plaintiff but that in addition defendant would pay him upon his

severing his connection with the corporation all sums. plaintiff had invested in this stock.

There is no merit in defendant's contention this. contract could not be performed within one year from the time it was made, and being an oral contract, it therefore comes within the statute of frauds, subsection 7 of Section 470, Kentucky Statutes. In the first place,. it was not only possible for this contract to have been performed within one year from the time it was entered into, but at the time the contract was made it must have been within the contemplation of the parties that in all probability it would be performed within the year. In the second place, a contract is no longer executory, and subsection 7 of Section 470 has no application thereto, where it has been fully performed upon one side and the other party by its terms has a longer time than one year in which to perform his part thereof. East Tennessee Telephone Company v. Paris Electric Company, 156 Ky. 762, 162 S. W. 530, Ann. Cas. 1915C, 543; West v. King, 163 Ky. 561, 174 S. W. 11; Dant v. Head, 90 Ky. 255, 13 S. W. 1073, 12 Ky. Law Rep. 153, 29 Am. St. Rep. 369; Maloney v. Maloney, 258 Ky. 567, 80 S. W. (2d) 611.

This is not an action for specific performance, nor is it one for recission, but is an action for breach of contract, and the measure of damages is the difference between the contract price and the fair cash market value of the stock at the time of the breach. The plaintiff ordered two instructions which covered in an appropriate manner all the issues, including the measure of damages, and the trial judge should have given them. But he refused to give the instructions plaintiff offered and on his own motion gave the following instruction:

"No. 1. If you believe from the evidence that in April, 1925, the defendant, Pilcher, agreed with the plaintiff, Stadler, that if Stadler would buy the 37 shares of common stock of Henry Pilcher's Sons Corporation concerning which you have heard evidence from defendant, Pilcher, said Pilcher would buy back said stock from said Stadler at the price paid by him when Stadler should leave the employ of said corporation, the law is for the plaintiff, W. F. Stadler, and you should so find, in the sum of $3330.00; but unless you so believe from the evidence, the law is for the defendant, W. E. Pilcher,

and you should so find, saying so by your verdict and no more.''

The error in the instruction the trial judge gave is he failed to cover the case. In effect it tells the jury if they believe the parties entered into a contract in 1925 wherein defendant agreed to purchase this stock from plaintiff upon his severing connection with the corporation, the jury will find for the plaintiff the sum he paid for this stock. This instruction does not cover the agreement made between plaintiff and defendant at the time they renewed their contract on the issuance of the 8 per cent preferred stock; nor does it require the jury to believe plaintiff had severed his connection with the corporation as a condition precedent to recovery. The trial judge failed to give an instruction on the measure of damages and this is fatal, even though the foregoing criticisms were not. While it is true plaintiff introduced considerable evidence this stock was worthless, and the jury presumably took this view of the case, yet the defendant introduced evidence this stock had a book value of around $85 and this very fact is proof the stock in March, 1936, may have had some cash market value. Certainly defendant was entitled to have submitted to the jury the measure of plaintiff's damage, if any, was the difference between the purchase price he paid for this stock, $3330, and the fair cash market value of same in March, 1936, at which time plaintiff made demand upon defendant to purchase it.

Defendant argues the instruction should limit plaintiff's damages to $2012.50 as representing the cost of plaintiff's stock after the capital structure of the corporation was reduced to $57\frac{1}{2}$ per cent of its former value. He is wrong in this for the reason the change in the capital structure did not affect this contract as decided by us herein. Defendants' further argument that the instruction should tell the jury plaintiff claims to have bought 39 shares of stock for $3510 is without merit as plaintiff in his substituted petition alleged he bought 37 shares of stock for $3330 and his prayer therein asks recovery from defendant in this sum.

The instruction given by the trial judge submitted nothing to the jury except whether defendant and plaintiff entered into a contract in April, 1925, telling the jury if the parties did so, then to return a verdict for the plaintiff in the sum of $3330. On account of the trial

judge's error in failing to properly instruct the jury the judgment in this common law action is reversed. Upon another trial of the case, should the evidence be the same, the judge will give in substance the two instructions which were offered by the plaintiff upon the first trial. Defendants' side of the case may be covered by the converse of plaintiff's first instruction, although the judge will give defendant such instructions as his evidence entitles him to, which are not inconsistent with this opinion. Instruction No. 2, being on the measure of damages, the word "fair" will be inserted before the word "cash," so this phrase will read: "the fair cash market value of plaintiff's stock."

Having reversed the common law action, there can be no question raised now as to whether plaintiff is the owner of the stock, and we can see no reason why as a stockholder of the corporation he should be denied access to the books and records of the corporation by himself, or his agent, at reasonable times and upon reasonable notice for the purpose of inspecting same. Otis-Hidden Company v. Scheirich, 187 Ky. 423, 219 S. W. 191, 22 A. L. R. 19. We think the injunction granted by the chancellor restraining the corporation from preventing or refusing to allow plaintiff to inspect the books and records of the corporation at reasonable times and upon reasonable notice should remain in effect.

The corporation complains no bond was fixed by the chancellor in the order granting the injunction as required by Section 278, subsection 3, of the Civil Code of Practice, but this section refers only to temporary injunctions and has no application to this case as the injunction here was a final order. Sandy Hook Bank's Trustee v. Bear, 250 Ky. 177, 61 S. W. (2d) 1045; Cossar v. Klein, 227 Ky. 768, 14 S. W. (2d) 160.

The corporation further complains the chancellor erred in granting the injunction as no affidavit was made by plaintiff in compliance with Section 273 of the Civil Code of Practice, requiring that before an injunction can be granted an affidavit must be filed stating the injunction had not previously been refused by the court or any circuit judge. Again, the corporation has confused a final injunction with a temporary injunction. Section 273 of the Code relates only to the granting of a temporary injunction and not to a final injunction. Howard et al. v. Simpson, 175 Ky. 237, 194 S. W. 105.

Counsel for the corporation discuss in their briefs the questions of res adjudicata and laches. But in view of the fact the common law action was for damages on account of defendant's failure to comply with his contract and to repurchase plaintiff's stock, we are convinced there was no question of res adjudicata involved in the equity action at the time the injunction was granted. Certainly, the plaintiff is not guilty of laches because he has waited several years to inspect the corporation's books, as the corporation has been in no manner prejudiced by plaintiff's delay in exercising this right. We deem it unnecessary to discuss the questions of res adjudicata and laches.

The judgment is reversed in the common law action for proceedings consistent with this opinion. The judgment in the equity suit is affirmed.