McCORMICK *v.* FRISCH, ET AL., TRUSTEES, ET AL.

[No. 79, October Term, 1951.]

*Decided January 11, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Roger A. Clapp*, with whom were *Hershey, Donaldson, Williams & Stanley* on the brief, for the appellant.

*G. C. A. Anderson* for Charles P. McCormick, *et al.*, appellees.

Submitted on brief by *Hinkley & Singley* for Paul T. Frisch and Frederick J. Singley, Jr., Trustees, appellees.

DELAPLAINE, J., delivered the opinion of the Court.

Charles P. McCormick, of Baltimore, executed a deed of trust on October 25, 1943, in accordance with a separation agreement entered into with his wife, Marion H. McCormick, in contemplation of divorce. Paul T. Frisch and Frederick J. Singley, Jr., the trustees, brought this suit in equity to obtain the instructions of the Court regarding Mr. McCormick's right to purchase certain shares of stock held by the trustees.

In the separation agreement, executed September 20, 1943, Mr. McCormick agreed to pay certain sums of money to Mrs. McCormick as alimony and for the support

of their minor son, Charles P. McCormick, Jr., and to pay all of the son's school and college bills. He also agreed to convey the title to their residence in Baltimore to Mrs. McCormick as her sole and separate property. He further agreed to give 500 shares of common stock in McCormick & Company to Mrs. McCormick, and to deliver his remaining 1,757 shares of common stock and 5 shares of preferred stock to the trustees as security for the payments which he agreed to make. The agreement further provided: "It is further understood and agreed that the husband shall at all times during the existence of this agreement or the existence of the trust have the option to purchase any or all of said stock, at and for the price of $25 per share for the common stock and $100 per share for the preferred stock."

The deed of trust provides that the income from the 1,757 shares of common stock and the 5 shares of preferred stock shall be paid to Mr. McCormick as long as he makes the payments to Mrs. McCormick, but in the event of default the trustees are authorized to transfer the stock to their own names and collect the dividends and apply them as far as necessary to carry out the covenants. The trustees are authorized to dispose of the stock, if necessary. Our attention is particularly directed to the reservation of the right to purchase any or all of the common stock at $25 per share.

On July 5, 1949, the board of directors of McCormick & Company voted to amend the charter of the corporation by providing that the authorized capital stock shall be as follows: (1) 30,000 shares of 5 per cent preferred stock of the par value of $100 each, making the aggregate value of the preferred stock $3,000,000; (2) 50,000 shares of common stock without par value; and (3) 150,000 shares of non-voting common stock without par value. The proposed charter amendment was approved by the stockholders on July 20, 1949.

Upon approval of the amendment by the State Tax Commission on July 29, 1949, the corporation divided each share of common stock into one share of common

stock and three shares of non-voting common stock. The trustees turned in the 1,757 shares, and received in exchange therefor 1,757 shares of common stock and 5,271 shares of non-voting common stock.

Mr. McCormick subsequently notified the trustees of his intention to exercise his right to purchase this stock. As the trustees were not certain how the option had been affected, they instituted this suit in the Circuit Court of Baltimore City to obtain the advice of the Court. Mr. McCormick answered that he was entitled to purchase the 1,757 shares of common stock and the 5,271 shares of non-voting common stock at the price agreed upon in the agreement and deed of trust. Mrs. McCormick contested that right. On May 28, 1951, the chancellor entered a decree ordering the trustees to deliver both the common stock and the non-voting common stock to Mr. McCormick for $43,925.

Mrs. McCormick, appealing from that decree, contends that the recapitalization of McCormick & Company, under which the old common stock was exchanged for two classes of new common stock, destroyed the option. She claims that, inasmuch as the stock split-up was never contemplated by the parties, the right to purchase no longer exists.

There is no question that the split-up was not a stock dividend. After the split-up, each stockholder had exactly the same interest in the corporation as before. Any holder of one share of common stock received one share of common stock and three shares of non-voting common stock. Under the charter amendment, there is no difference between the common stock and the non-voting common stock, except that the non-voting common stock has no voting rights. A share of stock of a corporation represents an *aliquot* portion of the net capital assets. A certificate of stock is not the stock itself. It is merely the evidence of the holder's ownership of the stock and of his rights as a stockholder to the extent therein specified. Under the recapitalization of McCormick & Company, there was no change in the capital or in the surplus.

The issuance of the new certificates did not add anything to the assets of the corporation. The capital stock remained as it was. Only the number of shares was increased. The new certificates of stock were merely a substitution for the old certificates representing the same capital. *Public Service Commission v. Consolidated Gas, Electric Light & Power Co.*, 148 Md. 90, 100, 129 A. 22.

In *Pilcher v. Stadler*, 276 Ky. 450, 124 S. W. 2d 475, the president of a corporation sold a number of shares of stock to an employee and agreed to repurchase them at any time the employee might sever his connection with the corporation. While the employee was holding the stock, the corporation reduced its capital and issued 6 per cent preferred stock in place of 8 per cent preferred stock. When the employee left the corporation, the president refused to buy the new shares, claiming that the substitution of the new shares had destroyed the subject matter of the contract. The Court of Appeals of Kentucky held that as the president had agreed to repurchase any stock bought by the employee, the employee had a cause of action against him for breach of contract, notwithstanding the fact that the capital stock of the corporation had been reduced and the 8 per cent stock held by the employee had been converted into 6 per cent stock. The Court rejected the president's contention that the converting of the 8 per cent stock into 6 per cent stock destroyed the subject matter of the contract, even though the capital stock had been greatly reduced. The Court observed that the 6 per cent stock was only a "continuation" of the 8 per cent stock with merely a reduction of 2 per cent on its return.

In the case before us there is less doubt, if there is any, than in the case in Kentucky, for here there has been no change whatever except that one share of the common stock was split into four shares. The 1,757 shares of stock were placed in trust to give Mrs. McCormick security that Mr. McCormick would make the payments which he had covenanted to make to her. The

stock was placed in the hands of two trustees, but Mr. McCormick retained control over the *corpus*. He reserved the option to purchase the stock at $25 per share. The price at which he could acquire the stock from the trustees was $43,925. It is apparent that when the separation agreement and the deed of trust were executed, Mr. McCormick contemplated the possibility that the stock might increase in value, and he put a maximum price on the stock to protect himself in case it increased in value. As the stock was merely security for the payments to Mrs. McCormick, the option gave Mr. McCormick the right to substitute $43,925 in cash in place of the stock.

For these reasons we have no hesitation in affirming the chancellor's decree directing the trustees to deliver to Mr. McCormick 1,757 shares of common stock and 5,271 shares of non-voting common stock upon payment of the sum of $43,925.

*Decree affirmed, with costs.*